JAMES McMANIS (40958) *jmcmanis@mcmanislaw.com*
TYLER ATKINSON (257997) *tatkinson@mcmanislaw.com*
HILARY WEDDELL (293276) *hweddell@mcmanislaw.com*
McMANIS FAULKNER
50 W. San Fernando Street, 10th Floor
San Jose, CA  95113
Telephone:  (408) 279-8700
Facsimile:  (408) 279-3244

Attorneys for Plaintiff,
MELISSA EGGE, M.D.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MELISSA EGGE, M.D., | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | **DEMAND FOR JURY TRIAL** |
| COUNTY OF SANTA CLARA, a public entity, SANTA CLARA VALLEY MEDICAL CENTER, JOHN STIRLING, M.D., PHOUNG NGUYEN, M.D., JEFFREY SMITH, M.D. and DOES 1-50, inclusive, | |
| Defendants. | |

## INTRODUCTION

Dr. Melissa Egge devoted her life and career to preventing and treating child abuse.  A mother of four herself, shortly after finishing her residency and fellowship training at Harbor-UCLA, she joined Santa Clara Valley Medical Center ("SCVMC") in 2011 to serve as a child abuse expert.

During her tenure with SCVMC, although she received glowing reviews from her peers and her employer, she worked largely in the shadows.  Her patients were typically the underprivileged and underrepresented.  She gave voice to the voiceless, and spoke up for people who could not speak up for themselves.  For all of her achievements, however, in early 2016, she

1  lost everything when a case assigned to her supervisor ended in tragedy: a young boy who had
2  been treated at SCVMC was murdered in cold blood.

3        Dr. Egge became a scapegoat for the boy's death.  In the aftermath, in the midst of shock
4  and public outrage, Dr. Egge was abruptly terminated after she spoke up about systemic failures
5  and the mistakes of her supervisors.  After her termination, confidential details and inaccurate
6  statements were leaked to the press.  On information and belief, County employees with
7  privileged access to protected records disseminated these accusations in violation of established
8  procedures and basic due process.  The County publicly blamed Dr. Egge for the boy's death for
9  the purpose of deflecting further criticism and avoiding much more complicated and entrenched
10  issues.  In the process, the County wrongfully sullied Dr. Egge's good name, reputation, honor,
11  and integrity.

12        **JURISDICTION AND VENUE**

13        1.     This action arises under 42 U.S.C. § 1983 and the Constitution of the United
14  States.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court also has
15  supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

16        2.     Venue is proper in the Northern District of California pursuant to 28 U.S.C.
17  § 1391(b) because the action arises therein, and a substantial part of the events giving rise to this
18  action occurred therein.

19        **INTRADISTRICT ASSIGNMENT**

20        3.     Assignment of this action to the San Jose Division is proper under Civil Local
21  Rules 3-2(c) and 3-2(e), because a substantial part of the events giving rise to the claims alleged
22  herein occurred in the County of Santa Clara.

23        **PARTIES**

24        4.     Melissa Egge, M.D. ("Dr. Egge") is, and at all times herein mentioned was, a
25  resident of the County of Santa Clara, State of California.

26        5.     Defendant County of Santa Clara ("defendant" or "County") is, and at all times
27  herein mentioned was, a chartered subdivision of the State of California and a public entity, with
28  the capacity to sue and be sued.  Defendant County is responsible for the actions, omissions,

2

1  policies, procedures, practices, and customs of its various agents and agencies, including Santa

2  Clara Valley Medical Center ("SCVMC") and its employees and agents.  At all times relevant to

3  the facts alleged herein, defendant County was responsible for assuring that the actions,

4  omissions, policies, procedures, practices, and customs of SCVMC, their employees and agents,

5  and Does 1 through 50, inclusive, complied with the laws of the State of California and the

6  Constitution of the United States.

7        6.     John Stirling, M.D. ("Dr. Stirling") at all times herein mentioned was an

8  employee of the County and the Director of the Center for Child Protection at Santa Clara Valley

9  Medical Center.  He is sued in his individual and official capacities.

10       7.     Phuong Nguyen, M.D. ("Dr. Nguyen") at all times herein mentioned was an

11 employee of the County and the Chief of Staff of Santa Clara Valley Medical Center.  She is

12 sued in her individual and official capacities.  As Chief of Staff of Santa Clara Valley Medical

13 Center, Dr. Nguyen was tasked with, among other duties, (1) enforcing the Medical Staff Bylaws

14 and Rules, promoting quality of care, implementing sanctions when warranted, and promoting

15 compliance with procedural safeguards when corrective action has been requested or initiated;

16 (2) calling, presiding at, and being responsible for the agenda of all Medical Executive

17 Committee and Quarterly General Medical Staff meetings; (3) serving as Chair of the Medical

18 Executive Committee, and, in that capacity, the individual responsible for the organization and

19 conduct of the Medical Staff; (4) serving as a spokesperson for the Medical Staff in external

20 professional and public relations; and (5) interacting with the Chief Executive Officer and

21 Governing Body.

22       8.     Jeffrey Smith, M.D. ("Dr. Smith") is, and at all times herein mentioned was, the

23 County Executive of the County of Santa Clara.  He is sued in his individual and official

24 capacities.  As the County Executive of the County of Santa Clara, Dr. Smith was tasked with,

25 among other duties, (1) appointing, supervising, suspending, or removing all officers and

26 department heads of the County, except elected officials and those officers and department heads

27 whose power of appointment is vested in another body; (2) coordinating the work of all offices

28 and departments in the County; (3) supervising and directing the preparation of the annual

3

1   budget of the County; and (4) preparing an annual report on the finances and administrative

2   activities of the County, together with recommendations for the betterment of public service.

3         9.     Plaintiff does not know the true names and capacities of defendants sued herein as

4   Does 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.

5   Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

6   Plaintiff is informed and believes and thereon alleges that each of the fictitiously named

7   defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's

8   damages as herein alleged were proximately caused by their conduct.

9        10.    Each defendant sued in this complaint acted as the agent or employee of every

10  other defendant.  Any reference in this complaint to "defendant," "defendants," or to an

11  individually-named defendant, also refers to each and every defendant, including Does 1 through

12  50.

13       11.    On information and belief, defendants entered into a conspiracy in furtherance of

14  the wrongful acts alleged in this Complaint.  Each defendant was aware that the other defendants

15  planned to commit these wrongful acts.  Each defendant agreed with the other defendants, and

16  intended that these acts be committed.

17       12.    On information and belief, each defendant aided and abetted the other defendants

18  in the commission of the wrongful acts alleged in this Complaint. Each defendant knew that the

19  wrongful acts alleged in this Complaint were committed by the other defendants against plaintiff.

20  Each defendant gave substantial assistance and encouragement to the other defendants in

21  furtherance of these alleged acts. Each defendant's conduct was a substantial factor in causing

22  harm to plaintiff.

23                **GENERAL ALLEGATIONS**

24       13.    Dr. Egge is a Suspected Child Abuse and Neglect ("SCAN") physician.  Dr. Egge

25  was hired by the County of Santa Clara on or about July 1, 2011, as a Child Abuse Pediatrician

26  at the Santa Clara Valley Medical Center ("SCVMC").  At all relevant times, Dr. Egge reported

27  to Dr. Stirling, the Director of the Center for Child Protection at SCVMC.    Dr. Egge and Dr.

28  Stirling, the only two SCAN physicians at SCVMC, alternated on call for child abuse issues as

4

COMPLAINT FOR DAMAGES; Case No.:

they came up.  Both Dr. Egge and Dr. Stirling reported to Stephen Harris, M.D. ("Dr. Harris"), the Chair of the Department of Pediatrics.

14.     On the evening of July 3, 2015, a two (2) year old child was transferred from O'Connor Hospital to SCVMC.  At the time, it was believed by medical personnel that the child suffered two (2) fractures.  Dr. Egge was consulted by telephone about the child shortly after midnight on July 4, 2015, by Dr. Ke-You Zhang, an intern at a SCVMC.  Such "telephone consultations" with SCAN physicians were a common practice at SCVMC and were frequently used by mandated reporters who suspected abuse in lieu of making a report to Child Protective Services ("CPS").

15.     Dr. Zhang told Dr. Egge that she had a scenario she wanted to "run by her."  She said she was treating a child with bilateral supracondylar fractures.  Dr. Zhang said that the child's mother reported that the boy was running, slipped, and fell backwards and landed on both of his outstretched hands.  Dr. Zhang said the child was seen initially at O'Connor Hospital, but was referred to SCVMC because of concerns about non-accidental trauma and orthopedic management.  Dr. Egge told Dr. Zhang, if the doctors at O'Connor suspected non-accidental trauma, they should have made a report.[1]  Dr. Egge went on to explain that the scenario Dr. Zhang described, given the age of the child, was not a pattern of injury that is typical for non-accidental trauma, and thus, she did not have a suspicion of child abuse.

16.     At the time of the telephone call, no orthopedic physicians had seen the child, and no x-rays were available.  Dr. Egge was never asked to come see the child or perform an inpatient consultation.  Dr. Egge went off call that morning, and she had no further clinical involvement with the child.

---

[1] Doctors are mandated reporters.  They are required to make a CPS report when they have a reasonable suspicion that a child has been a victim of abuse or neglect.

COMPLAINT FOR DAMAGES; Case No.:

17. Over the ensuing days, various physicians at SCVMC discovered the child had suffered two additional bone fractures, and the child ultimately underwent orthopedic surgery over the Fourth of July Weekend. Dr. Stirling consulted on the case while the child was an in-patient at SCVMC. Although there were arguably a number of red flags, no reports were made, and eventually the child was discharged to go home with his mother.

18. In November, 2015, the Orthopedic Review Committee reviewed the child's case as part of a Quality Improvement review. The Committee became concerned that a report to CPS was warranted. Dr. Harris was contacted and asked to weigh-in on whether a suspected child abuse report should have been made. Since Dr. Stirling was the assigned SCAN consult on the case, Dr. Stephen Harris, the Chair of the Department of Pediatrics, asked Dr. Egge to do a supplemental review of an ongoing Quality Improvement review of the child's case.

19. On November 17, 2015, Dr. Egge briefly reviewed the child's records. Dr. Egge's review included details not available to her when she had the initial telephone consultation on July 4, 2015, including evidence that the child suffered four (4) fractures total—not only the two (2) told to her at the time of her telephone consult. Dr. Egge emailed Dr. Harris and stated that given the history of four (4) fractures, she believed a CPS report should have been made. Dr. Harris asked Dr. Egge to talk to Dr. Stirling about reporting the case. Dr. Egge immediately discussed the case with Dr. Stirling, and as the official SCAN physician listed on the case, he agreed to file the CPS report. Dr. Egge reasonably relied on Dr. Stirling's statement that he would make the CPS report. Dr. Egge emailed Dr. Harris that same day to inform him Dr. Stirling was going to report the matter to CPS.

20. On December 22, 2015, before leaving for a week-long vacation, Dr. Egge checked with Dr. Stirling to ensure he had made the aforementioned-promised CPS report. Dr. Stirling told Dr. Egge that he had forgotten to make the CPS report, but promised he would do so that evening. Dr. Stirling was Dr. Egge's boss and the Director of the Center for Child Protection. Dr. Egge reasonably relied on his statement that he would make the CPS report. Dr. Stirling however never made the CPS report, and in January, 2016, the child died as a result of alleged physical and sexual abuse.

COMPLAINT FOR DAMAGES; Case No.:

21.     During a Death Review Committee meeting[2] in February, 2016, Dr. Egge learned that the child had died in January 2016, of suspected child abuse.  Dr. Egge immediately checked the child's records and found that on or about December 24, 2015, Dr. Stirling had put a note in the child's chart stating that he had again reviewed the file and decided there was a low index of suspicion of child abuse, and therefore a CPS report was not warranted.  Dr. Egge subsequently spoke to Dr. Stirling, who claimed he did not thoroughly review the chart after their conversation in December, and had forgotten about one of the fractures.

22.     Concerned about what transpired, Dr. Egge contacted Dr. Harris to inform him of the child's death and Dr. Stirling's failure to report the case to CPS.  Dr. Egge pressed Dr. Harris to have the matter reviewed and provided him with copies of her various emails to Dr. Stirling noting he would make the CPS report.  In her conversation with Dr. Harris, Dr. Egge not only voiced her concerns about this specific child's case, but highlighted multiple concerns that SCVMC policies and procedures were inadequate to comply with California's mandated reporting laws. Dr. Egge suggested they meet to review the case and the SCVMC polices which she believed led to the failure in reporting.  As a result of Dr. Egge's urgings, SCVMC initiated an external peer review of the child's case.

23.     Dr. Egge told Dr. Harris that not only had Dr. Stirling failed to comply with the law, but other employees at SCVMC had as well, and that the practices instituted and encouraged by SCVMC leadership, resulted in suspicions of child abuse not getting reported—a violation of law.  At SCVMC, pediatricians, trauma surgeons, orthopedists, and the like, all of whom were mandated reporters, instead deferred to child abuse experts when deciding to make a CPS report in instances where suspicion of child abuse already existed.  Such a practice resulted

---

[2] Dr. Egge and Dr. Stirling alternated attending the Death Review Committee meeting each month.  The meeting is multi-disciplinary, and attended by a number of doctors who review the deaths of all children under the age of 18 in the County.

COMPLAINT FOR DAMAGES; Case No.:

1    in violations of law, as a mandated reporter with suspicion of child abuse has a duty to file such a

2    report, or, to determine that another mandated reporter will file such a report.

3         24.    Dr. Egge told Dr. Harris about many other systemic failings which she believed

4    may have contributed to this child's death.  For example, Dr. Egge stated that SCVMC's

5    protocol should have been to call CPS to make a report before or in conjunction with consulting

6    a SCAN expert regarding suspected abuse.  Dr. Egge also noted that SCVMC needed to have a

7    way to track CPS reports to determine whether they have been made in the electronic medical

8    record.   Dr. Egge also expressed concern that there was no pediatric radiologist or pediatric

9    social worker available over the July Fourth weekend when the child was initially seen by

10   doctors at SVMC.

11        25.    On March 11, 2016, Dr. Egge was put on administrative leave.  On April 21,

12   2016, the Medical Executive Committee of SCVMC recommended a 6-month summary

13   suspension of Dr. Egge's clinical privileges and medical staff memberships.[3]  The very next day,

14   April 22, 2016, Dr. Smith as CEO of Santa Clara County, terminated Dr. Egge's employment.

15   Dr. Egge's suspension and termination were completely unwarranted, and were for activities that

16   arose in the context of her acting as a Quality Assurance Reviewer, which under SCVMC's

17   Medical Staff Bylaws entitled her to immunity.  Summary suspension is an extreme measure,

18   very rarely imposed, and under the Bylaws it is appropriate only where there is clear evidence of

19   immediate risk of harm to patients.  Because Dr. Egge was on administrative leave at the time of

20   her suspension, and therefore was not seeing patients, the claim that Dr. Egge was an "immediate

21   risk of harm to patients" was false.

22   ///

23

24

25

26

27   [3] The Medical Executive Committee of SCVMC failed to convene a meeting within one (1)
     week of the imposition of the summary suspension to review the suspension, as required by the
28   SCVMC Medical Staff Bylaws.

                                              8

26.     In addition to the summary suspension of Dr. Egge and the termination of her employment, Dr. Nguyen, on behalf of SCVMC, also reported Dr. Egge to the Medical Board of California.  Although only suspensions totaling 15 days or more are reportable to the Medical Board of California under Business and Professions Code section 805, SCVMC submitted a report to the Medical Board for what was effectively a one (1) day suspension of Dr. Egge's privileges and membership.  This 805 report will be a black mark on Dr. Egge's career for the rest of her life.  On information and belief, Dr. Egge's suspension, termination, and SCVMC's report to the Medical Board were committed with malice and in bad faith.  Dr. Egge was made a scapegoat and she was punished for voicing her concerns about SCVMC's customs, policies, and practices.

27.     On information and belief, the County or its agents intentionally leaked to the press erroneous and adverse information about Dr. Egge and her termination.  On information and belief, the County disseminated accusations to the press in an attempt to direct blame on Dr. Egge, and to deflect criticism from those who were actually responsible for the conduct criticized by the press, and to distract attention from SCVMC's deficient procedures, which were the true cause of the failure to report this case to CPS.  As a result of these false and misleading statements, Dr. Egge was defamed, and her good name, reputation, honor, and integrity were tarnished.  The County's stigmatizing statements, including the purported reasons for her termination, were false.  The wrongful acts of the County and its agents deprived Dr. Egge of her property interest in continued employment with the County, and her fundamental liberty interest in the right to work in her chosen field.  The wrongful acts alleged above were so arbitrary and capricious that they shock the conscience.

28.     On October 21, 2016, Dr. Egge served a claim against the County of Santa Clara for the conduct alleged herein, in compliance with California Government Code section 900 et seq. ("Government claim").  On November 17, 2016, the County rejected the Government claim by letter.

///

///

COMPLAINT FOR DAMAGES; Case No.:

**FIRST CAUSE OF ACTION**

**(42 U.S.C. § 1983 – "Stigma-Plus" – Against Defendants County, SCVMC, Nguyen, and Smith)**

29.     Plaintiff incorporates herein the preceding paragraphs of this Complaint, as if fully set forth.

30.     Defendants were acting under color of state law at all relevant times.

31.     Plaintiff was an employee of the County, and a civil servant with a property right in her employment.  At all relevant times, plaintiff also had a protected liberty interest in her right to work in her chosen field of health care.

32.     On or about April 22, 2016, plaintiff was summarily suspended by SCVMC.  On or about April 23, 2016, plaintiff's employment was terminated by County of Santa Clara CEO Jeff Smith.

33.     On information and belief, including the aforementioned leak and media reports of plaintiff's termination, defendants disclosed plaintiff's name to local media outlets and made statements that seriously disparaged her professional fitness.

34.     The allegations against plaintiff were untrue.

35.     Due to wrongful disclosures by defendants, plaintiff was subjected to ridicule and scorn in the community, and in the medical profession.

36.     On information and belief, the defendants disseminated accusations to the press in an attempt to make plaintiff a scapegoat in order to deflect criticism away from those who were actually responsible for the conduct criticized by the press.

37.     On information and belief, defendants published the purported reasons for plaintiff's termination.

38.     On information and belief, the defendants publicized stigmatizing information about plaintiff in connection with her termination.

39.     Plaintiff contests the accuracy of defendant's stigmatizing statements, including the purported reasons for her termination.

40.     As a direct and proximate result of the actions and omissions of defendants

1  described above, plaintiff has suffered injury and damages, including deprivation of

2  constitutional rights, according to proof at the time of trial.

3      41.     As a direct and proximate result of the actions and omissions of defendants

4  described above, defendants harmed plaintiff's good name, reputation, honor, and integrity.

5  Defendants stigmatized plaintiff in connection with the deprivation of her protected property

6  interest in her public employment, and her protected liberty interest in the right to work in her

7  chosen field.  Defendants' wrongful acts have also deprived plaintiff of the ability to work in her

8  professional field.

9      42.     The stigmatizing statements against plaintiff, and stigmatizing information about

10 plaintiff, were made in connection with the denial of a tangible interest, *i.e.*, employment, and

11 the alteration of her right to practice her trade, as recognized by state law.  Plaintiff also suffered

12 from a severe loss of reputation due to defendants' conduct.  As a result of defendants' conduct,

13 plaintiff has been unable to obtain similar permanent employment.

14      43.     The County is liable under 42 U.S.C. § 1983 because Dr. Stirling, Dr. Nguyen,

15 and Dr. Smith acted under color of law when each deprived plaintiff of her Constitutional rights,

16 and each had final policymaking authority from the County concerning their conduct, and were

17 acting as final policymaker for the County at the time they were engaged in their conduct, and

18 their conduct was so closely related to the deprivation of plaintiff's rights as to be a moving force

19 that caused plaintiff' injury.

20      44.     The County is also liable under 42 U.S.C. § 1983 because Dr. Stirling, Dr.

21 Nguyen, and Dr. Smith knew of and specifically made a deliberate choice to approve the

22 deprivations of plaintiff's rights and the basis for them.

23      45.     The County is also liable under 42 U.S.C. § 1983 because the acts of Dr. Stirling,

24 Dr. Nguyen, and Dr. Smith deprived plaintiff of her Constitutional rights, and each acted

25 pursuant to a widespread and longstanding practice and custom of the County; and the

26 widespread and longstanding practice and custom caused the deprivation of the plaintiff's rights;

27 and the widespread and longstanding practice and custom was so closely related to the

28 deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

COMPLAINT FOR DAMAGES; Case No.:

**SECOND CAUSE OF ACTION**

**(42 U.S.C. § 1983 – Deprivation of Substantive Due Process –**

**Against Defendants County, SCVMC, Nguyen, and Smith)**

46.     Plaintiff incorporates herein the preceding paragraphs of this Complaint, as if fully set forth.

47.     Defendants were acting under color of state law at all relevant times.

48.     Defendants' wrongful acts deprived plaintiff of her property interest in continued employment with the County, and her fundamental liberty interest in the right to work in her chosen field.

49.     Defendants' wrongful acts alleged above were so arbitrary and capricious that they shock the conscience.  Defendants publicly humiliated plaintiff notwithstanding the issues faced by SCVMC were long-standing, beyond her control, and not caused by her, and despite having not subjecting others at SCVMC to such demeaning treatment.

50.     Defendants' wrongful acts failed to advance a legitimate governmental objective.

51.     As a direct and proximate result of the actions and omissions of defendants described above, plaintiff has suffered injury and damages, including deprivation of her constitutional rights, according to proof at the time of trial.  As a direct and proximate result of the actions and omissions of defendants described above, plaintiff has been unable to obtain similar permanent employment.

52.     The County is liable under 42 U.S.C. § 1983 because Dr. Stirling, Dr. Nguyen, and Dr. Smith acted under color of law when each deprived plaintiff of her Constitutional rights, and each had final policymaking authority from the County concerning their conduct, and were acting as final policymaker for the County at the time they were engaged in their conduct, and their conduct was so closely related to the deprivation of plaintiff's rights as to be a moving force that caused plaintiff' injury.

53.     The County is also liable under 42 U.S.C. § 1983 because Dr. Stirling, Dr. Nguyen, and Dr. Smith knew of and specifically made a deliberate choice to approve the deprivations of plaintiff's rights and the basis for them.

12

COMPLAINT FOR DAMAGES; Case No.:

54. The County is also liable under 42 U.S.C. § 1983 because the acts of Dr. Stirling, Dr. Nguyen, and Dr. Smith deprived plaintiff of her Constitutional rights, and each acted pursuant to a widespread and longstanding practice and custom of the County; and the widespread and longstanding practice and custom caused the deprivation of the plaintiff's rights; and the widespread and longstanding practice and custom was so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

## THIRD CAUSE OF ACTION

### (Promissory Estoppel – Against Defendants County, SCVMC, and Stirling)

55. Plaintiff incorporates herein the preceding paragraphs of this Complaint, as if fully set forth.

56. On or about November, 2015, plaintiff and defendant Dr. Stirling, individually and as an agent of SCVMC and the County, entered into an agreement.

57. On or about November 2015, Dr. Stirling promised plaintiff that he would submit a report of suspected child abuse to CPS. On or about December 22, 2015, Dr. Stirling affirmed his promise to submit a report to CPS.

58. In so doing, Dr. Stirling knew or should have known that plaintiff would be reasonably induced to rely on Dr. Stirling's promise and representation.

59. Dr. Stirling did not perform the promised act.

60. As a proximate result of Dr. Stirling's failure to perform, plaintiff was harmed and damaged in an amount according to proof at trial.

## FOURTH CAUSE OF ACTION

### (Breach of Contract – Against All Defendants)

61. Plaintiff incorporates herein the preceding paragraphs of this Complaint, as if fully set forth.

62. The SCVMC Medical Staff Bylaws constituted a contract between plaintiff and defendants.

///

63.     Plaintiff did all, or substantially all, of the significant things that the Bylaws required her to do.

64.     All conditions required by the Bylaws for defendants' performance had occurred.

65.     Defendants failed to do things required by the Bylaws, and in fact did things that were prohibited by the Bylaws.

66.     As a proximate result, plaintiff was harmed and damaged in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION

### (Violation of Labor Code § 1102.5 – Against Defendants County and SCVMC)

67.     Plaintiff incorporates herein the preceding paragraphs of this Complaint, as if fully set forth.

68.     Plaintiff was employed by SCVMC and the County of Santa Clara.

69.     Defendants believed that plaintiff had disclosed to a person with authority over plaintiff, and an employee with authority to investigate, discover, or correct legal violations, that SCVMC policies and procedures were inadequate to comply with laws and regulations, including California's mandated reporting laws.

70.     Plaintiff had reasonable cause to believe that the information she reported to defendants disclosed violations of, or noncompliance with, state laws.

71.     As a proximate result of plaintiff's reporting to defendants violations of statutes of public importance, defendants retaliated against plaintiff, including by summarily suspending her, reporting plaintiff to the Medical Board of California, terminating her employment, and disseminated inflammatory and inaccurate accusations to the press.

72.     Plaintiff was harmed and damaged in an amount according to proof at trial.

73.     Defendant's conduct was a substantial fact in causing plaintiff's harm.

WHEREFORE, plaintiff prays for relief as set forth below.

///
///
///

14

COMPLAINT FOR DAMAGES; Case No.:

## **PRAYER FOR RELIEF**

Plaintiff seeks as relief, without limitation, the following:

1.      General damages;

2.      Special damages;

3.      Compensatory damages;

4.      Attorneys' fees as allowed by law;

5.      Costs of suit;

6.      Interest as allowed by law; and

7.      Such other and further relief as the Court may deem proper.

Dated:  May 17, 2017                                    McMANIS FAULKNER

                                                              /s/ James McManis
                                                       _____
                                                       JAMES McMANIS
                                                       TYLER ATKINSON
                                                       HILARY WEDDELL

                                                       Attorneys for Plaintiff,
                                                       MELISSA EGGE, M.D.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Amendment VII to the United States Constitution and by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  May 17, 2017                                    McMANIS FAULKNER

                                                              /s/ James McManis
                                                       _____
                                                       JAMES McMANIS
                                                       TYLER ATKINSON
                                                       HILARY WEDDELL

                                                       Attorneys for Plaintiff,
                                                       MELISSA EGGE, M.D.

COMPLAINT FOR DAMAGES; Case No.: