JAMES R. WILLIAMS, County Counsel (S.B. #271253)
ARYN PAIGE HARRIS, Deputy County Counsel (S.B. #208590)
BRYAN K. ANDERSON, Deputy County Counsel (S.B. #170666)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendants
COUNTY OF SANTA CLARA (erroneously sued
herein as SANTA CLARA VALLEY MEDICAL
CENTER); PHUONG NGUYEN, M.D.; and
JEFFREY SMITH, M.D.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MELISSA EGGE, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA, SANTA CLARA VALLEY MEDICAL CENTER, JOHN STIRLING, M.D., PHUONG NGUYEN, M.D., JEFFREY SMITH, M.D., and DOES 1-50, inclusive,<br><br>Defendants. | No. 17-CV-02842-BLF<br><br>**DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**F.R.C.P. 12(b)(6)**<br><br>Date: November 16, 2017<br>Time: 9:00 A.M.<br>Ctrm.: 3, 5th Floor<br>Judge: Beth Labson Freeman |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 16, 2017, at 9:00 A.M., or as soon thereafter as

the matter may be heard, in Courtroom 3, 5th Floor of the United States District Court, located at

280 South First Street, San Jose, California, Defendants County of Santa Clara (erroneously also

sued as Santa Clara County Valley Medical Center); Phuong Nguyen, M.D.; and Jeffrey Smith,

M.D., will move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order

1  dismissing Plaintiff's Complaint.  This motion will be based on the grounds that Plaintiff's

2  Complaint fails to state a claim upon which relief can be granted.

3       This motion is based upon this Notice, the Memorandum of Points and Authorities filed

4  herewith, Request for Judicial Notice, files and pleadings in this action, and on such other matters as

5  the Court may deem necessary and proper.

6  Dated:  June 27, 2017                              Respectfully submitted,

7                                                    JAMES R. WILLIAMS
                                                     County Counsel
8

9                                         By:       /s/ Aryn Paige Harris
10                                                 ARYN PAIGE HARRIS
                                                   BRYAN K. ANDERSON
11                                                 Deputy County Counsel

12                                                 Attorneys for  Defendants
13                                                 COUNTY OF SANTA CLARA (erroneously
                                                   sued herein as SANTA CLARA VALLEY
14                                                 MEDICAL CENTER); PHUONG NGUYEN,
                                                   M.D.; and JEFFREY SMITH, M.D.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I. INTRODUCTION .........................................................................................................1

II. ALLEGATIONS ..........................................................................................................1

    1.    SCVMC Employed Drs. Stirling and Egge as Child Abuse Specialists.................1

    2.    Dr. Egge Was Consulted About a Child With Two Fractures and She Opined that the Fractures Were Likely Accidental and No Report to CPS Was Needed. ...........................................................................................................2

    3.    After Learning About Two Additional Fractures, Dr. Egge Opined that the Injuries Were Likely Abusively Caused and Relied on Dr. Stirling to Report Her Suspicion to CPS.  Dr. Egge Knew Dr. Stirling Failed to Do So and Again Relied on Dr. Stirling to Make the CPS Report but He Did Not and the Child Died.............................................................................................................2

    4.    Dr. Egge Reported the CPS Reporting Failure to Dr. Harris....................................3

    5.    The Medical Executive Committee Summarily Suspended Dr. Egge's Clinical Privileges at the SCVMC. ...........................................................................3

    6.    The County of Santa Clara Terminated Dr. Egge's Employment. .........................4

    7.    Media Reports ...........................................................................................................4

III. ARGUMENT ...............................................................................................................4

    A.    STANDARD FOR MOTION TO DISMISS .........................................................4

    B.    THE FIRST AND SECOND 42 U.S.C. §1983 CLAIMS ALLEGING DUE PROCESS VIOLATIONS UNDER THE FOURTEENTH AMENDMENT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ....................5

        1.    Legal Standard Applicable to 42 U.S.C. §1983 Claims. ............................5

        2.    Dr. Egge's First Claim Alleging Stigma Plus Fails to State a Claim. .........6

        3.    Dr. Egge's Second Claim Alleging Substantive Due Process Fails to State a Claim. .........................................................................................14

        4.    Dr. Egge Has Failed to Plausibly Plead County Section 1983 Liability. ..17

    C.    DR. EGGE'S THIRD CLAIM ALLEGING PROMISSORY ESTOPPEL IS SUBJECT TO DISMISSAL BECAUSE SHE CANNOT SATISFY THE ELEMENTS OF THE CLAIM, WHICH IMMUNITIES WOULD BAR IN ANY EVENT ...........................................................................................................18

        1.    The Elements of Promissory Have Not Been Pled Against the County and SCVMC.............................................................................................19

        2.    The Elements of Promissory Estoppel Are Likewise Lacking for Dr. Stirling's Failure to Report Because Dr. Egge Did Not Reasonably Rely on His Promise. ...........................................................................19

        3.    No Case Supports Use of Promissory Estoppel in this Context, and the Use of It in This Context Cannot Be Supported. ......................................20

        4.    Immunity Precludes the Promissory Estoppel Claim. ...............................21

    D.    DR. EGGE'S FOURTH CLAIM FOR BREACH OF CONTRACT AGAINST ALL DEFENDANTS FAILS .............................................................................22

        1.    Under California Law, Medical Staff Bylaws Only Create a Contract If They Expressly State So and SVMC's Bylaws Contain No Such Provision. ..............................................................................................23

2. Dr. Egge Fails to Allege Sufficient Facts to Support a Breach of Contract Claim Under *Iqbal*.........................................................................24

IV. CONCLUSION...........................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASES

*Advanced Choices, Inc. v. State Dept. of Health Services*
   182 Cal.App.4th 1661 (2010) ....................................................................................... 19

*AE ex rel. Hernandez v. Cty. of Tulare*
   666 F.3d 631 (9th Cir. 2012) ....................................................................................... 17

*Albright v. Oliver*
   510 U.S. 266 (1994) ....................................................................................... 16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................... 4, 5, 12, 16

*Barren v. Harrington*
   152 F.3d 1193 (9th Cir.1998) ....................................................................................... 12

*Barton v. City of Portland*
   242 F. Supp. 2d 893 (D. Or. 2002) ....................................................................................... 12

*Bd. of Regents v. Roth*
   408 U.S. 564 (1972) ....................................................................... 6, 7, 8, 9

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ....................................................................................... 4, 5

*Bishop v. Wood*
   426 U.S. 341 (1976) ....................................................................................... 8, 9

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*
   727 F.3d 917 (9th Cir. 2013) ....................................................................................... 7, 9

*Brady v. Gebbie*
   859 F.2d 1543 (9th Cir. 1988) ....................................................................................... 7, 10

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*
   149 F.3d 971 (9th Cir. 1998) ....................................................................................... 6

*Burden v. County of Santa Clara*
   81 Cal.App.4th 244 (2000) ....................................................................................... 22

*Campanelli v. Bockrath*
   100 F.3d 1476 (9th Cir. 1996) ....................................................................................... 8

*City of Stockton v. Superior Court*
   42 Cal.4th 730 (2007) ....................................................................................... 21

*Codd v. Velger*
   429 U.S. 624 (1977) ....................................................................................... 10

*County of Sacramento v. Lewis*
   523 U.S. 833 (1998) ....................................................................................... 15

*Davila-Lopes v. Zapata*
111 F.3d 192 (1st Cir. 1997)........................................................................................ 11

*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc*.
211 Cal. App. 4th 230 (2012) ..................................................................................... 21

*Eberhard v. California Highway Patrol*
73 F. Supp. 3d 1122 (N.D. Cal. 2014).......................................................................... 12

*Engquist v. Oregon Dep't of Agric.*
478 F.3d 985 (9th Cir. 2007) ............................................................................... 9, 15, 16

*Ennix v. Stanten*
556 F. Supp. 2d 1073 (N.D. Cal. 2008).......................................................................... 23

*Farell v. Placer City*
23 Cal.2d 624 (1944) ................................................................................................. 20

*Ferraro v. Chadwick*
221 Cal.App.3d 86 (1990) ............................................................................................ 22

*Gillette v. Delmore*
979 F.2d 1342 (9th Cir. 1992) ............................................................................... 17, 18

*Gong v. City of Rosemead*
226 Cal. App. 4th 363 (2014) ..................................................................................... 21

*Graham v. Connor*
490 U.S. 386 (1989) .................................................................................................. 16

*Hafer v. Melo*
502 U.S. 21 (1991) .................................................................................................... 14

*Hartmann v. Cal. Dep't of Corr. & Rehab.*
707 F.3d 1114 (9th Cir. 2013) ........................................................................................ 4

*Hawkins v. Rhode Island Lottery Commission*
238 F.3d 112 (1st Cir. 2001)......................................................................................... 13

*Hayman v. City of Galveston*
273 U.S. 414 (1927) .................................................................................................. 11

*Holscher v. Olson*
No. CV-07-3023-EFS, 2008 WL 2645484 (E.D. Wash. June 30, 2008) ...................................... 12

*Howard v. Contra Costa Cty.*
No. 13-CV-03626 NC, 2014 WL 824218 (N.D. Cal. Feb. 28, 2014) ...................................... 5, 12

*Hufford v. McEnaney*
249 F.3d 1142 (9th Cir. 2001) ....................................................................................... 16

*Hyland v. Wonder*
972 F.2d 1129 (9th Cir. 1992) ......................................................................................... 7

*Janda v. Madera Community Hospital*
16 F.Supp.2d 1181 (E.D. Cal. 1998) ............................................................................... 23

iv

*Janis v. California State Lottery Com.*
68 Cal.App.4th 824 (1998) ................................................................................................... 21

*Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.*
23 Cal. 4th 305 (2000) ....................................................................................................... 21

*Kappadahl v. Alcan Pac. Co.*
222 Cal.App.2d 626 (1963) ................................................................................................ 20

*Khodayari v. Mashburn*
200 Cal.App.4th 1184 (2011) ............................................................................................. 21

*Kibler v. N. Inyo Cty. Local Hosp. Dist.*
39 Cal. 4th 192 (2006) ....................................................................................................... 25

*Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities*
64 F.3d 810 (2d Cir. 1995) ................................................................................................. 11

*Lacey v. Maricopa Cty.*
693 F.3d 896 (9th Cir. 2012) .............................................................................................. 13

*Linder v. Thrifty Oil Co.*
23 Cal.4th 429 (2000) ......................................................................................................... 22

*Ludwig v. Bd. of Trustees of Ferris State Univ.*
123 F.3d 404 (6th Cir. 1997) .............................................................................................. 12

*Maine v. Thiboutot*
448 U.S. 1 (1980) ................................................................................................................. 5

*McQuillion v. Duncan*
306 F.3d 895 (9th Cir. 2002) ................................................................................................ 6

*Miklosy v. Regents of Univ. of California*
44 Cal. 4th 876 (2008) ....................................................................................................... 22

*Miller v. State of California*
18 Cal.3d 808 (1997) ............................................................................................... 9, 23, 24

*Monell v. Department of Social Servs.*
436 U.S. 658 (1978) ............................................................................................................. 5

*Murphy v. Goss*
103 F. Supp. 3d 1234 (D. Or. 2015) ..................................................................................... 7

*Mustafa v. Clark Cty. Sch. Dist.*
157 F.3d 1169 (9th Cir. 1998) ............................................................................................ 11

*O'Byrne v. Santa Monica-UCLA Medical Ctr.*
94 Cal.App.4th 797 (2001) ................................................................................................. 23

*OSU Student Alliance v. Ray*
699 F.3d 1053 (9th Cir. 2012) .............................................................................................. 5

*Paul v. Davis*
424 U.S. 693 (1976) ....................................................................................................... 7, 16

v

*Pembaur v. City of Cincinnati*
   475 U.S. 469 (1986) .................................................................................... 18

*Planned Parenthood Affiliates v. Van de Kamp*
   181 Cal.App.3d 245 (1986) ......................................................................... 20

*Portman v. Cty. of Santa Clara*
   995 F.2d 898 (9th Cir. 1993) ....................................................................... 17

*Reiber v. City of Pullman*
   918 F. Supp. 2d 1091 (E.D. Wash. 2013) ................................................... 12

*Reinlasoder v. City of Colstrip*
   657 F. App'x 636 (9th Cir. 2016) ................................................................ 16

*Roe v. State of California*
   94 Cal.App.4th 64 (2001) ............................................................................ 21

*Roth v. Veteran's Admin.*
   856 F.2d 1401 (9th Cir. 1988) ....................................................................... 7

*Siegert v. Gilley*
   500 U.S. 226 (1991) ...................................................................................... 7

*Smith v. Adventist Health Sys./West*
   182 Cal. App. 4th 729 (2010) ............................................................... 23, 24

*Soo Park v. Thompson*
   851 F.3d 910 (9th Cir. 2017) ....................................................................... 13

*Tibbetts v. Kulongoski*
   567 F.3d 529 (9th Cir. 2009) ......................................................................... 8

*Tibbetts v. State Acc. Ins. Fund Corp.*
   No. CIV. 06-503-AC, 2008 WL 4144441 (D. Or. Sept. 4, 2008) ................. 12

*Ulrich v. City & Cty. of San Francisco*
   308 F.3d 968 (9th Cir. 2002) ......................................................................... 6

*Universal By-Prod., Inc. v. City of Modesto*
   43 Cal. App. 3d 145 (1974) ......................................................................... 21

*URI Student Senate v. Town of Narragansett*
   631 F.3d 1 (1st Cir. 2011) ........................................................................... 12

*US Ecology, Inc. v. State of California*
   92 Cal.App.4th 113 (2001) .......................................................................... 18

*US Ecology, Inc. v. State*
   129 Cal. App. 4th 887 (2005) ................................................................ 20, 21

*Velez v. Levy*
   401 F.3d 75 (2nd Cir. 2005) .................................................................. 13, 16

*Watson v. Cty. of Santa Clara*
   468 F. Supp. 2d 1150 (N.D. Cal. 2007) ...................................................... 22

*Wedges/Ledges of Cal., Inc. v. City of Phoenix*
  24 F.3d 56 (9th Cir. 1994) ................................................................. 14

*Williams v. Department of Water & Power*
  130 Cal. App. 3d 677 (1982) ......................................................... 9, 10

*Winskowski v. City of Stephen*
  442 F.3d 1107 (8th Cir. 2006) ........................................................... 12

*Wojcik v. Mass. State Lottery Comm'n.*
  300 F.3d 92 (1st Cir. 2002) ............................................................... 12

CONSTITUTION & STATUTES

**Federal**

U.S. Constitution, amend. XIV, § 1 ........................................................ 6

42 U.S.C. § 1983 ........................................................................... 1, 5

**State**

Bus. & Prof. Code, § 805 ............................................................... 8, 13

Cal. Const., art. XI, §§ 4, subd. (f), 5, subd. (b)(4) ..................................... 9

Cal.Civ.Code § 425.16 ..................................................................... 25

Cal Pen. Code §11165.7(a)(21) ......................................................... 19, 20

Cal. Pen. Code §11166(c) .................................................................. 21

Cal. Pen. Code § 11166(h) ................................................................. 19

Cal. Pen. Code § 11166, subdivision (a) .................................................. 20

Cal. Pen. Code §11172(a) .................................................................. 22

Gov. Code § 814 ........................................................................... 21

Gov. Code § 815 ........................................................................... 22

Gov. Code § 818.8 ......................................................................... 22

Gov. Code § 995.2(a)(2) ................................................................... 22

FEDERAL RULES OF CIVIL PROCEDURE

Rule 8(a)(2) ................................................................................. 4

Rule 12(b)(6) ....................................................................... 1, 4, 5, 25

REGULATIONS

California Code of Regulations, Title 22, §§ 70701 and 70703 ............................ 23

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**

**INTRODUCTION**

Dr. Melissa Egge's Complaint asserts five causes of action, including two causes of action under 42 U.S.C. § 1983 and three state law causes of action. Defendants County of Santa Clara, Phuong Nguyen and Jeffrey Smith respectfully request that Dr. Egge's complaint be dismissed for failure to state a claim as to her first four causes of action.

Dr. Egge's Section 1983 causes of action are deficient because she fails to allege more than the mere elements of these theories and she has no property interest in her employment. Dr. Egge also fails to sufficiently plead any plausible basis for her conclusory allegations that the individual Defendants personally denied Dr. Egge due process or deprived her of a liberty or property right, or that the County is liable for the alleged deprivations.

Dr. Egge's promissory estoppel cause of action should be dismissed because Dr. Egge's own allegations demonstrate that she could not reasonably rely on Dr. Stirling to report her own suspicion of child abuse, and she cannot plead around the applicable immunities. Dr. Egge's breach of contract cause of action should be dismissed because the Medical Staff Bylaws of SCVMC are not a contract and Dr. Egge has otherwise failed to plausibly plead a contract claim.

Due to these failures, Dr. Egge's causes of action for stigma plus, substantive due process, promissory estoppel and breach of contract should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**II.**

**ALLEGATIONS**

1. <u>SCVMC Employed Drs. Stirling and Egge As Child Abuse Specialists.</u>

Dr. Stephen Harris is the Chair of the Department of Pediatrics at SCVMC. (Compl. ¶ 13.) Dr. John Stirling reported to Dr. Harris and was the Director of the Center for Child Protection. (*Id.* ¶ 6.) Dr. Egge reported to Dr. Stirling. (*Id.* ¶ 13.) Drs. Stirling and Egge were the only two Suspected Child Abuse and Neglect ("SCAN") physicians employed at Santa Clara Valley Medical Center and they alternated providing on-call coverage for child abuse issues. (*Id.* ¶ 13.)

2.   Dr. Egge Was Consulted About a Child With Two Fractures and She Opined that the Fractures Were Likely Accidental and No Report to CPS Was Needed.

On July 4, 2015, Dr. Ke-You Zhang consulted with Dr. Egge – who was on call that evening – regarding a two year old that had been transferred from O'Connor Hospital to SCVMC for medical care for elbow fractures of both arms. (Compl. ¶¶ 14, 15.) Dr. Zhang described the child's injuries and mechanism of fall and Dr. Egge opined that the pattern of injury was atypical for non-accidental trauma and that she did not have suspicion for child abuse. (*Id*. ¶ 5.) Dr. Egge alleges that she was not asked to see the child and had no further "clinical" involvement with the child. (*Id*. ¶ 16.)

It was later discovered that the child had two additional bone fractures. (Compl. ¶ 6.) Dr. Egge alleges that Dr. Stirling was consulted regarding these additional injuries, which Dr. Egge described as "red flags." (*Id*. ¶ 17.) The child was discharged home. (*Id*. ¶ 17.)

3.   After Learning About Two Additional Fractures, Dr. Egge Opined that the Injuries Were Likely Abusively Caused and Relied on Dr. Stirling to Report Her Suspicion to CPS. Dr. Egge Knew Dr. Stirling Failed to Do So and Again Relied on Dr. Stirling to Make the CPS Report but He Did Not and the Child Died.

In November of 2015, the Orthopedic Review Committee reviewed the child's case and became concerned that no report to Child Protective Services (CPS) had been made. (Compl. ¶ 18.) Dr. Harris was notified by a committee member and asked Dr. Egge to "weigh-in" on whether a suspected child abuse report should have been made. (*Id*.) On November 17, 2015, Dr. Egge reviewed the case and – having learned of the two additional fractures – now concluded that she believed a report to CPS should have been made. (*Id*. ¶ 19.) Dr. Egge informed Dr. Harris of her opinion; Dr. Harris asked Dr. Egge to talk to Dr. Stirling about reporting the case; and Dr. Stirling agreed to report. (*Id*.) Dr. Egge emailed Dr. Harris indicating that Dr. Stirling would report the case to CPS. (*Id*.)

On December 22, 2015, Dr. Egge checked with Dr. Stirling to see if he had made the CPS report. (Compl. ¶ 20.) Dr. Egge alleges that Dr. Stirling informed her that he had forgotten but promised to follow up that evening. (*Id*.) Dr. Stirling never made the report. (*Id.*)

In January of 2016, the child died as result of alleged physical and sexual abuse. (Compl. ¶ 20.)

4.     Dr. Egge Reported the CPS Reporting Failure to Dr. Harris.

Dr. Egge alleges that, upon learning of the child's death in January 2016, she checked the medical record and learned that Dr. Stirling had put a note in the chart on December 24, 2015, stating that he had again reviewed the chart and decided that there was a low index of suspicion and that no CPS report was warranted.  (Compl. ¶ 21.)  Dr. Egge claims that Dr. Stirling told her that he had not thoroughly reviewed the chart after their conversation in December and he had forgotten about one of the fractures.  (*Id.* ¶ 22.)

Dr. Egge alleges that she contacted Dr. Harris to advise him about the child's death and Dr. Stirling's failure to report the case to CPS.  (Compl. ¶ 22.)  Dr. Egge alleges that she voiced her concerns about the child's case as well as multiple concerns that SCVMC's policies and procedures were inadequate to comply with California's mandated reporting laws.  (*Id.*)  Dr. Egge claims that she suggested that Dr. Harris meet with her to review the case and SCVMC's policies.  According to Dr. Egge, SCVMC initiated an external peer review of the child's case at her urging.  (*Id.*)  Dr. Egge claims that she told Dr. Harris that Dr. Stirling and other physicians failed to follow the law and that SCVMC practices encouraged by leadership resulted in suspicions of child abuse not getting reported, in violation of the law.  (*Id.* ¶ 23.)  In particular, Dr. Egge alleges that pediatricians, trauma surgeons, and orthopedists improperly deferred to child abuse experts when deciding to make a CPS report in instances where suspicions of child abuse already existed.  (*Id.*)  On March 11, 2016, Dr. Egge was placed on administrative leave.  (*Id.* ¶ 25.)

5.     The Medical Executive Committee Summarily Suspended Dr. Egge's Clinical Privileges at the SCVMC.

On April 21, 2016, the Medical Executive Committee (MEC) of SCMVS recommended a 6-month suspension of Dr. Egge's clinical privileges and medical staff membership.  (Compl. ¶ 25.)  Dr. Egge alleges that summary suspension is only authorized under the Medical Staff Bylaws where there is clear evidence of immediate risk of harm to patients and, since she was on administrative leave, she was not a risk.  (*Id.*)  Dr. Egge further alleges that the MEC failed to convene a meeting within one week to review the suspension as required by the Bylaws.  (*Id.* n.3)

/ /

3

She also alleges that, following the summary suspension, Dr. Phuong Nguyen, the MEC

President, reported Dr. Egge to the Medical Board of California. (Compl. ¶ 26.) Dr. Egge alleges

that the medical board report is a black mark on the career and – "on information and belief" – was

done with malice and in bad faith. (*Id*. ¶ 26.) Dr. Egge claims she was made a scapegoat and

punished for voicing her concerns about SCVMC's customs, policies, and practices. (*Id*.)

      6.    The County of Santa Clara Terminated Dr. Egge's Employment.

Dr. Egge alleges that on April 22, 2016, the County Executive, Dr. Jeff Smith, terminated her

employment. (Compl. ¶25.) Dr. Egge alleges that she was terminated for activities that occurred as

Quality Assurance Reviewer, which entitles her to immunity under the Medical Staff Bylaws. (*Id*.)

      7.    Media Reports

Dr. Egge alleges that the "County or its agents" intentionally leaked adverse information

about Dr. Egge to the press. (Compl. ¶ 27.) The County allegedly leaked the information to deflect

blame and criticism from those who were actually responsible for the conduct and distract attention

from SCVMC's deficient procedures. (*Id*.) Dr. Egge claims that these acts deprived her of a

property interest in continued employment with the County and her liberty interest to work in her

chosen field. (*Id*.)

**III.**

**ARGUMENT**

**A.    STANDARD FOR MOTION TO DISMISS**

A party may move to dismiss for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal

theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't*

*of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes the pled factual

allegations are true and draws reasonable inferences from them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). A complaint need contain only a "short and plain statement of the claim showing that the

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned

accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at

4

678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id*. (quoting *Twombly*, 550 U.S. at 555). Evaluation under Rule 12(b)(6) is a context-specific task drawing on "judicial experience and common sense." *Id*. at 679.

**B. THE FIRST AND SECOND 42 U.S.C. §1983 CLAIMS ALLEGING DUE PROCESS VIOLATIONS UNDER THE FOURTEENTH AMENDMENT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

1. Legal Standard Applicable to 42 U.S.C. §1983 Claims.

Congress created a federal cause of action pursuant to 42 U.S.C. § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Section 1983 provides a cause of action to redress both violations of the Constitution and violations of federal statutes. *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980).

To state a valid Section 1983 claim, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). In other words, the complaint must "tie[ ] the constitutional violations to the individual defendants." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). With respect to the County, the Supreme Court has held that municipalities are "persons subject to damages liability under 42 U.S.C. § 1983." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91 (1978). However, a municipality cannot "be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Liability may attach to a municipality only where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

In order to plausibly plead a claim under Section 1983, "(1) a complaint 'may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively'; and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Howard v. Contra Costa Cty.*, No. 13-CV-03626 NC, 2014 WL 824218, at *14 (N.D.

Cal. Feb. 28, 2014) (dismissing stigma plus claim, and citing *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)).

2.  Dr. Egge's First Claim Alleging Stigma Plus Fails to State a Claim.

Dr. Egge's stigma plus claim should be dismissed because she fails to plausibly plead (1) any contested stigmatizing statement that deprived her of a protected liberty interest, (2) a protected property interest, or (3) the failure to receive due process. *See Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (identifying elements of due process and stigma plus claim); *see also McQuillion v. Duncan,* 306 F.3d 895, 900 (9th Cir. 2002) ("A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections") (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)).

a.  *Dr. Egge's complaint fails to plausibly allege publication of stigmatizing statement(s) that deprived her of a liberty interest.*

Dr. Egge's complaint generally alleges that Defendants made stigmatizing statements about her that deprived her of the liberty to work in her chosen field or obtain similar permanent employment. (*See* Compl. ¶¶ 27, 33, 38-42, 48, 51.) However, the complaint fails to allege the substance of any of the statements and fails to identify whether, when and how such unspecified statements were published by any of the Defendants. Dr. Egge's complaint also fails to allege any facts that would plausibly support her deprivation of liberty claims. Dr. Egge's failure to plead any factual support for the alleged stigmatizing statements and their impact on protected liberty interests requires dismissal of her complaint.

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "[A] plaintiff who had no property interest in continued employment may nonetheless be entitled under the Fourteenth Amendment to a hearing if a decision not to rehire him was accompanied by 'any charge against him that might seriously damage his standing and associations in his community' or 'imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.'" *Ulrich*, 308 F.3d at 982 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564,

6

573 (1972)). "[I]njury to reputation alone is not sufficient to establish a deprivation of a liberty interest protected by the Constitution." *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). "The rule in *Paul* has come to be known as the 'stigma plus' test for establishing deprivation of liberty based on governmental defamation. Under that test, a plaintiff must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of 'some more tangible interest[ ] such as employment,' or the alteration of a right or status recognized by state law." *Id.* (quoting *Paul,* 424 U.S. at 701, 711).

The Ninth Circuit has found analysis of specific statements that are alleged to stigmatize is essential to determining whether or not the complaint states a stigma plus claim. "Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest, but less severe accusations must be analyzed on a case-by-case basis, and allegations of mere incompetence or inability are not sufficient." *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 n.6 (9th Cir. 2013) (affirming dismissal of stigma plus claim).[1] Because Dr. Egge's complaint completely fails to describe the alleged statements, she fails to plausibly plead such statements are sufficiently severe to be stigmatizing.

Further, the impact of such statements must be sufficiently severe in order to infringe a liberty interest in future employment. "Stigmatizing statements that merely cause 'reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession' do not constitute a deprivation of liberty." *Blantz,* 727 F.3d at 925. "Thus, stigmatizing statements do not deprive a worker of liberty unless they effectively bar her from all employment in her field." *Id.* (citing *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1411 (9th Cir. 1988)).[2] Because Dr. Egge's complaint provides no plausible

---

[1] Also, in order to qualify as stigmatizing, the accusations must be substantially false. *Murphy v. Goss*, 103 F. Supp. 3d 1234, 1241 (D. Or. 2015) (citing *Siegert v. Gilley,* 500 U.S. 226, 234 (1991)); *see also Brady v. Gebbie*, 859 F.2d 1543, 1552-53 (9th Cir. 1988) (affirming verdict of stigma plus where there was sufficient evidence the statements were contested and false).

[2] The ability to secure a new position is relevant to the assessment of the severity of the alleged stigma. *Hyland v. Wonder*, 972 F.2d 1129, 1142 (9th Cir. 1992).

support for her vague and conclusory assertions she is unable to work in her "chosen" field or obtain "similar" permanent employment, she fails to plead a liberty deprivation.

Also, the timing of the statements is essential because "'there must be some temporal nexus between the employer's statement and the termination' and that the stigmatizing statements cannot be too remote to be considered 'in the course' of the plaintiff's termination." *Tibbetts v. Kulongoski*, 567 F.3d 529, 538 (9th Cir. 2009) (quoting *Campanelli v. Bockrath*, 100 F.3d 1476, 1483 (9th Cir. 1996)). Dr. Egge's complaint is completely silent as to when any (unspecified) statement was allegedly published, and so again fails to plead statements that are sufficiently close in time to her termination to even potentially qualify as stigmatizing.

Where communications are not made public, they cannot form the basis of a claim for impairment in one's good name and reputation. *See Bishop v. Wood*, 426 U.S. 341, 348–49 (1976) ("Since the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired."). While Dr. Egge's complaint refers generally to "leaks" to the press (¶¶ 27, 33), the complaint fails to identify whether and how such unspecified defamatory information was in fact published. And the information reported to the Medical Board of California in 805 report referenced by the complaint (¶ 26) was required and was confidential. Bus. & Prof. Code, § 805. Because Dr. Egge's complaint completely fails to plausibly allege that the unspecified statements were made public, she again fails to plead such statements are actionable.

### b. Dr. Egge's complaint fails to plausibly allege deprivation of property.

Dr. Egge's only claimed property interest is her employment with the County. (Compl. ¶¶ 27, 31, 41, 48.) The Fourteenth Amendment's due process guarantee applies to public employees who have a "property interest" in the terms or conditions of their employment. *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577.

//

//

8

"'[P]eople do not have liberty interests in a specific employer,' or in a civil service career generally." *Blantz*, 727 F.3d at 925. "Because the government as employer has broader powers than the government as regulator, the scope of judicial review is correspondingly restricted. Accordingly, the Supreme Court has warned that '[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies,' and therefore the Constitution cannot be interpreted to require judicial review of every such decision." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 994–95 (9th Cir. 2007), *aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008) (quoting *Bishop,* 426 U.S. at 349–50) (*overruled on other grounds by Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540–41 (1985)) (rejecting due process claim where the plaintiff is fired from public employment for reasons either false or mistaken).

"[G]overnment employees can have a protected property interest in their continued employment *if* they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." *Blantz*, 727 F.3d at 922 (holding that plaintiff nurse did not have a property interest in her employment based on orientation documents). A property interest in public employment must be established "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577. In California, the terms and conditions of public employment are determined by reference to applicable law. *Miller v. State of California*, 18 Cal.3d 808, 813 (1997).

Article XI, section (1)(b) of the California Constitutional gives all counties (including noncharter counties) the authority to control the appointment and compensation of their own employees, and other sections of Article XI provide that charter counties and charter cities have similar or even broader authority to control the appointment, compensation, and dismissal of their employees. *See* Cal. Const., art. XI, §§ 4, subd. (f), 5, subd. (b)(4). Santa Clara County is a charter county. (County Charter, Ex. A to Request for Judicial Notice ["RJN"].) Thus, courts should look to the County's charter, civil service rules and regulations, and employee handbook for guidance regarding Dr. Egge's employment rights. *Accord, e.g., Williams v. Department of Water & Power*,

9

130 Cal.App.3d 677, 680 (1982).

Defendant County's Charter and civil service rules establish that the "personnel system of the county shall be based on merit and equal opportunity." (Santa Clara County Charter, Section 700, Ex. A to RJN.)  Section 703 of the County Charter establishes a personnel board to recommend merit system rules to the Board of Supervisors and hear appeals of any person in the classified service relative to "suspension, demotion, or dismissal . . . ."  Pursuant to Section A25-34 of the County's Ordinance Code, the County adopted merit system rules for the administrative service of the County, but the rules have limited application to unclassified employees.  (County's Ordinance Code, Title A, Division A25, Chapter III, Article 1, Section A25-34, Ex. B to RJN.)  In particular, only Articles 1, 2, 6, 7, and 8 of Chapter III apply to employees in the unclassified service.  (*Id*.)  Importantly, Article 11, requiring that employees only be disciplined for cause, ***does not*** apply to unclassified employees.  (See *Id*. and Article 11, Section A25-301 [Discipline for Cause].)  And Section 701(a)7 of the Charter designates all physicians as unclassified employees.  (*Id*.)

Based on the above, under state and county law, the County did not need good cause to fire Dr. Egge.  As a result, Dr. Egge's allegation that she was deprived of a property interest in continued employment with the County fails because she held no such interest.  In light of the fact that Dr. Egge had no property interest in her continued employment, her due process property right allegations crumble under the Supreme Court decision in *Roth*.

Because Dr. Egge has not and cannot state a plausible basis for her claimed property interest in her employment, her claim for due process based on deprivation of a property interest in her first (and second) cause of action should be dismissed.

>         *c.  Dr. Egge's complaint fails to plausibly allege she was denied process.*

"Assuming all of the other elements necessary to make out a claim of stigmatization under *Roth* and *Bishop*, the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.'" *Codd v. Velger*, 429 U.S. 624, 627 (1977).[3]  If a plaintiff

---

[3] Reinstatement is not a remedy for an alleged violation of due process. *Brady v. Gebbie*, 859 F.2d 1543, 1551–52 (9th Cir. 1988).

alleging deprivation of a liberty interest was afforded an opportunity to clear her name, there is no due process claim. *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998) (citing *Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities,* 64 F.3d 810, 817–818 (2d Cir. 1995)). Dr. Egge's due process claims fail because Dr. Egge nowhere alleges that she was denied a hearing to clear her name, nor alleges how any such process was deficient.

As an initial matter, Dr. Egge has not plausibly pled that she had any constitutionally protected interest in her privileges at SCVMC.[4] And the Medical Staff Bylaws clearly provide for a hearing process. (See Bylaws at Article 14, Ex. C to RJN.) Instead, the complaint's sole reference to any process is found in footnote 3, in which Dr. Egge alleges that the MEC failed to convene a meeting within one week of imposition of the summary suspension of her clinical privilege and medical staff membership as required by the SCVMC Medical Staff Bylaws. (Compl. ¶ 24, n.3.) Even if this alleged failure to hold a hearing within one week could violate her due process rights, Dr. Egge misreads the Bylaws. Dr. Egge appears to be referencing Section 13.2-2 of the Bylaws, which provides:

> **Within one week after such summary action has been imposed**, a meeting of the Medical Executive Committee or a subcommittee of the Medical Executive Committee, appointed by the President of the Medical Staff, shall be convened to review and consider the action. Upon request, the member may attend and make a statement concerning the issues under investigation, on such terms and conditions as the Medical Executive Committee may impose, **although in no event shall any meeting of the Medical Executive Committee, with or without the member, constitute a "hearing" within the meaning of BYLAWS, ARTICLE 14, HEARINGS AND APPELLATE REVIEWS, nor shall any procedural Rules apply**." (Emphasis added)

(Medical Staff Bylaws, Ex. B to RJN [emphasis added].) Thus, the Bylaws specifically reject that Dr. Egge is entitled to the procedure her footnote apparently references. Instead, the Bylaws provide that Dr. Egge could have requested a hearing concerning the suspension of her privileges. (*Id.*, Section 14.2-3.) Critically, Dr. Egge's complaint is entirely silent as to whether she made any request for such a hearing, and whether any hearing pursuant to Article 14 of the Bylaws occurred or was denied. Because of this available process, Dr. Egge's due process claims are arguably not even

---

[4] There is no *per se* property right in such privileges. *See, e.g., Hayman v. City of Galveston*, 273 U.S. 414, 416–17 (1927) (holding that physician had no due process right to hospital privileges); *Davila-Lopes v. Zapata*, 111 F.3d 192, 197 (1st Cir. 1997) (same).

11
Memorandum of Points & Authorities ISO Defendants County of
Santa Clara and Drs. Nguyen and Smith's Motion to Dismiss

17-CV-02842-BLF

ripe (*Barton v. City of Portland*, 242 F. Supp. 2d 893, 902 n.4 (D. Or. 2002)) even if they had been properly pled.

Because Dr. Egge does not plausibly allege that she was denied a hearing, or was otherwise denied the opportunity to refute the charges made against her, her stigma plus claim should be dismissed.

### d. Dr. Egge's complaint fails to allege she requested any process.

Dr. Egge's stigma plus claim also should be dismissed because she fails to allege whether she requested a name-clearing hearing. *See, e.g., Reiber v. City of Pullman*, 918 F. Supp. 2d 1091, 1102–03 (E.D. Wash. 2013); *Holscher v. Olson*, No. CV-07-3023-EFS, 2008 WL 2645484, at *12– 13 (E.D. Wash. June 30, 2008); *Winskowski v. City of Stephen*, 442 F.3d 1107, 1111 (8th Cir. 2006); *Wojcik v. Mass. State Lottery Comm'n.*, 300 F.3d 92, 103 (1st Cir. 2002); *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 411 (6th Cir. 1997).[5]

### e. Dr. Egge has not alleged a plausible basis for Dr. Nguyen's personal liability.

To state a claim for personal liability against an individual defendant under Section 1983, Dr. Egge "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Plaintiff must allege facts, not simply conclusions, that show that [the] individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). In this case, Dr. Egge's allegations against Dr. Nguyen fail to state a Section 1983 stigma plus claim because she has not plead that the 'stigma' and 'plus' were both committed by Dr. Nguyen. *Eberhard v. California Highway Patrol*, 73 F. Supp. 3d 1122, 1131–32 (N.D. Cal. 2014) ("the Court determines that the 'stigma' and 'plus' must be committed by the same state actor to state a due process claim with respect to claims against individual government officials").[6]

---

[5] Other district court decisions in this Circuit have suggested a plaintiff need not request a name-clearing hearing to pursue a stigma plus claim. *See, e.g., Howard v. Contra Costa Cty.*, No. 13-CV-03626 NC, 2014 WL 824218, at *11 (N.D. Cal. Feb. 28, 2014); *Tibbetts v. State Acc. Ins. Fund Corp.*, No. CIV. 06-503-AC, 2008 WL 4144441, at *7 (D. Or. Sept. 4, 2008).

[6] The court recognized a split between the First and Second Circuits on this issue. *Compare URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 10 (1st Cir. 2011) ("Where the stigma and the incremental harm—the 'plus' factor—derive from distinct sources, a party cannot make out a viable

Here, the only factual allegations about Dr. Nguyen are that she is a County employee and Chief of Staff of SCVMC, her alleged job responsibilities – none of which include termination of employees, and that she reported Dr. Egge to the Medical Board of California pursuant to Business and Professions Code § 805. (Compl., ¶¶ 7, 26.)[7] Critically, the complaint alleges that Defendant Smith decided to terminate Dr. Egge's employment and makes no such allegation as to Dr. Nguyen. *Compare id*., ¶ 7 *with* ¶¶ 8, 25. And, as previously noted, Dr. Egge has not plausibly pled that she has any constitutionally protected right to staff privileges at SCVMC. (*See* Compl. ¶¶ 27, 31, 41, 48.)

Dr. Egge's apparent effort to include Dr. Nguyen under a conspiracy theory also fails to state a claim. Dr. Egge's sole allegation concerning any alleged conspiracy is found at paragraph 11 of the complaint, which summarily concludes "[o]n information and belief, defendants entered into a conspiracy in furtherance of the wrongful acts alleged in this Complaint. Each defendant was aware that the other defendants planned to commit these wrongful acts. Each defendant agreed with the other defendants, and intended that these acts be committed." Such conclusory conspiracy allegations are insufficient to expand the pool of responsible defendants subject to a Section 1983 claim. *See Lacey v. Maricopa Cty*., 693 F.3d 896, 939 (9th Cir. 2012) (conspiracy allegations "must be sufficiently specific to satisfy *Iqbal*" and demonstrate the defendant's participation in the conspiracy). To plead a conspiracy to violate constitutional rights, the complaint must plead facts sufficient to make the alleged conspiracy plausible. *See Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017) (finding specific allegations concerning a defendant's acts in support of alleged

---

procedural due process claim ... even if both sources are government entities.") and *Hawkins v. Rhode Island Lottery Commission,* 238 F.3d 112, 115–16 (1st Cir. 2001) (affirming dismissal of stigma plus due process claim where different individual actors were responsible for different conduct) with *Velez v. Levy*, 401 F.3d 75, 88-89 (2nd Cir. 2005) (holding that "[t]here is no rigid requirement ... that both the 'stigma' and the 'plus' must issue from the same government actor or at the same time" if the stigma and plus reasonably appear connected or the "plus" actor adopted the statements).

[7] The remainder of Dr. Egge's allegations concerning Dr. Nguyen summarily concludes that the County is liable for her alleged actions. Compl., ¶¶ 43-45, 52-54. Section II.B.4 at p. 17 explains why these allegations are insufficient to plausibly state a claim for County liability.

conspiracy sufficient to state a plausible claim).  Dr. Egge's bare conspiracy conclusion fails to meet

the plausibility requirement of *Iqbal* and should be dismissed.

To the extent Dr. Egge contends that the submission of the 805 report referenced by

paragraph 26 of her complaint supports her stigma plus claim, those allegations fail to cure her lack

of specificity as to any Defendant.  As previously noted (p.8), the 805 report is confidential and thus

not public.  Also, Dr. Egge's allegations in paragraph 26 fail to describe the substance of the

statements, when they were made in relation to her termination, whether and how the unspecified

statements were published to the public, and whether she requested or received any process.  Further,

Dr. Egge alleges only Dr. Nguyen submitted the 805 report, and as discussed above, Dr. Egge has

not adequately plead Dr. Nguyen is personally liable under Section 1983.  Nor has Dr. Egge

adequately plead that the County is liable for Dr. Nguyen's acts, as discussed below at page 17.[8]

3.      Dr. Egge's Second Claim Alleging Substantive Due Process Fails to State a Claim.

Dr. Egge's second claim alleging violations of substantive due process must be dismissed

because: (1) she does not have a property right in her continued employment, (2) she has failed to

allege facts necessary to sustain the extremely high pleading bar for an occupational liberty claim

under the substantive due process clause of the Constitution, and (3) she otherwise fails to plausibly

plead this claim.

a.      *The substantive due process claim fails for the same reasons as the stigma plus
claim and because she fails to plead that it is virtually impossible to find
employment in her chosen field.*

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's

showing of a liberty or property interest protected by the Constitution."  *Wedges/Ledges of Cal., Inc.

v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).  As discussed previously (III.B.2.b), Dr. Egge

cannot establish the alleged property interest in her continued employment with the County (Compl.

¶48) because she does not have a property right in her employment with the County.  Dr. Egge's

second claim is even vaguer than her stigma plus claims as to the claimed liberty interest.  She again

---

[8] While Plaintiff also sues Dr. Nguyen in her official capacity, such claims are treated as claims
against the governmental entity and not the named individual.  *Hafer v. Melo*, 502 U.S. 21, 25
(1991).

14

pleads Defendants deprived her of her liberty interest in the "right to work in her chosen profession" but does not even generically refer to any stigmatizing statements as alleged in the first claim. (*Id.*, ¶48.)

To the extent her alleged liberty interest is legally distinct from that in the stigma plus claim, Dr. Egge has still not pled a recognizable liberty interest. For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Substantive due process prohibits a government from depriving "a person of life, liberty, or property in such a way that ... interferes with rights implicit in the concept of ordered liberty." *Engquist*, 478 F.3d at 996.

In *Engquist*, the Oregon Department of Agricultural terminated Engquist from her highly specialized job as a food-standards specialist. *Engquist*, 478 F.3d at 996. At the time she was terminated, her supervisor told a customer that Engquist had run the department into the ground. *Id*. at 991. Engquist could not find work after applying for approximately 200 jobs. As an issue of first impression, the Ninth Circuit analyzed the showing necessary to establish a substantive due process violation based on the alleged deprivation of the right to pursue a particular profession.

The *Engquist* court decided that occupational freedom to practice the profession of one's choice is a protected liberty interest, even though substantive due process does not protect the right to be in any particular job. *Engquist*, 478 F.3d at 996. The court also noted that because not every tort gives rise to a substantive due process violation, substantive due process rights for occupational liberty only give rise to liability in "extreme cases," such as when a government creates a "blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." *Id*. at 997–98. The high standard cannot be understated as it is insufficient for the plaintiff to claim that the action had "some adverse effect on" plaintiff's "job prospects." *Id*. at 998. Instead, plaintiff must show it is "virtually impossible ... to find new employment in" plaintiff's chosen field. *Id*. As for Engquist, the Ninth Circuit concluded that no rational jury could find the defendant's "defamatory statements to two or three other people

15

in the industry" had caused the plaintiff's difficulty finding work, holding instead that the plaintiff

merely showed she had difficulty finding a job in the same highly specialized field in Oregon. *Id.* at

999.

Dr. Egge's allegation that Defendants leaked information to the media about her termination

is insufficient to constitute government blacklisting. *Reinlasoder v. City of Colstrip*, 657 F. App'x

636, 639 (9th Cir. 2016) (city's statements to the media about police Chief's termination and his

alleged proclivity for viewing pornography were insufficient under *Engquist*). And, fatal to her

claim, Dr. Egge alleges only that she is "unable to obtain similar permanent employment." (Compl.

¶ 51.) In other words, Dr. Egge is employed but apparently she views her employment as not

"similar," which is insufficient as a matter of law and subjects her claim to dismissal.

> *b.  The Court should dismiss the second claim generically alleging a violation of substantive due process because it is subsumed by Dr. Egge's stigma plus claim.*

Where a specific constitutional provision prohibits government action, plaintiffs seeking

redress for that prohibited conduct in a Section 1983 suit cannot make reference to the broad notion

of substantive due process. *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (*quoting Graham v.*

*Connor,* 490 U.S. 386, 395 (1989)); *Hufford v. McEnaney,* 249 F.3d 1142, 1151 (9th Cir. 2001).

Given that Dr. Egge has failed to allege facts sufficient to fall within the government blacklisting

rubric of *Engquist*, her second claim for generic substantive due process must be dismissed as the

stigma plus claim already covers this second claim. *See Velez,* 401 F.3d at 94 (dismissing plaintiff's

substantive due process claim on the basis that it was subsumed by her other more specific

constitutional claims, including her procedural due process stigma plus claim.)

> *c.  Under* Iqbal*, Dr. Egge's Substantive Due Process Claim is Insufficiently Pled.*

Dr. Egge has failed to plausibly allege any unconstitutional harm by any Defendant and,

under, *Iqbal* dismissal is warranted on this ground as well. *Iqbal*, 556 U.S. at 676. Dr. Egge's vague

assertion that she was "humiliated" by Defendants' unspecified actions does not implicate either a

protected property or liberty interest. *See Paul*, 424 U.S. at 694 (defamation standing alone does not

state a claim for relief under Section 1983 and the Fourteenth Amendment). Dr. Egge's assertion

that Defendants' actions were arbitrary and capricious also fails to state a claim because she had no

property right in her job. *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 908 (9th Cir. 1993) (alleged substantive due process violation for arbitrary and capricious discharge was not actionable absent property interest in the employment). Dr. Egge generically alleges that Dr. Stirling, Dr. Nguyen, and Dr. Smith knew of and specifically made a deliberate choice to the approve the deprivations of her rights. (Compl. ¶ 53.) This allegation makes little sense as the alleged deprivation in this claim is her continued employment and Dr. Egge alleges only that Dr. Smith terminated her employment. Further, it is unclear whether Dr. Egge intended to name Dr. Stirling in this cause of action. (*Compare* Compl. 12:3 and 12:26.) And while Dr. Egge seems to allege that Dr. Nguyen was a policymaking official, she only conclusory states that she had "policymaking authority from the County" concerning her "conduct." (Compl. ¶ 52.) Dr. Egge fails to plead sufficient facts to make this allegation plausible.

4.    Dr. Egge Has Failed to Plausibly Plead County Section 1983 Liability.

Even had Dr. Egge sufficiently pled a Section 1983 claim against any of the individual defendants, she has failed to plausibly plead County liability. A Section 1983 plaintiff may establish municipal liability in one of three ways. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). First, the plaintiff may prove that a municipal employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Id.* Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. *Id.* Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. *Id.* Dr. Egge's complaint fails to plausibly allege any of these three bases for County liability.

Dr. Egge's complaint alleges without any factual support that her alleged deprivation of due process resulted from "[a/the] widespread and longstanding practice and custom of the County." (Compl., ¶ 45, 54). Such a bare bones Section 1983 "practice and custom" claim is deficient, and must be supported by sufficient allegations of underlying facts and plausibly suggest an entitlement to relief. *AE ex rel. Hernandez*, 666 F.3d at 637.

17

Dr. Egge's complaint also fails to plausibly allege that the claimed deprivations resulted from a final policymaker's decision or ratification. Municipal liability does not attach unless the decision maker possesses final authority to establish municipal policy with respect to the action ordered. *Gillette*, 979 F.2d at 1349. "The fact that a particular official—even a policy-making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986) (plurality)). In *Gillette*, the Ninth Circuit held that a fire chief who possessed discretionary authority to hire and fire employees was not a final policymaker. *Id.* at 1350. The Court reasoned that the fire chief's actions could impose municipal liability only if he was responsible for establishing the city's employment policy. *Id.* The city charter and ordinances granted authority to make city employment policy to the city manager and city council. *Id.*

Dr. Egge does not even allege that Dr. Nguyen had any role in her termination. (*See* Compl., ¶¶ 7, 26.) And while Dr. Egge alleges that Dr. Smith made the discretionary decision to terminate her employment (Compl., ¶ 32), such an allegation is insufficient to plausibly claim the County is liable. As discussed above (III.B.2.b), Dr. Egge has not alleged and cannot plausibly allege that she has a property interest in her employment, rendering her allegation that Dr. Smith decided to terminate her employment irrelevant to her substantive due process claim against him and the County. Even if Dr. Egge could state a property claim to her employment, she has not plausibly alleged that Dr. Smith possessed or was delegated final authority to establish municipal employment policy, or that his alleged decision was ratified by policymakers with such authority.

**C. DR. EGGE'S THIRD CLAIM ALLEGING PROMISSORY ESTOPPEL IS SUBJECT TO DISMISSAL BECAUSE SHE CANNOT SATISFY THE ELEMENTS OF THE CLAIM, WHICH IMMUNITIES WOULD BAR IN ANY EVENT**

Promissory estoppel is "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for [a] promise sought to be enforced." *US Ecology, Inc. v. State of California*, 92 Cal.App.4th 113, 130 (2001). The doctrine applies against the government where the application of the doctrine would further public policies and prevent injustice. *Id*. at 131. The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the]

18

reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Advanced Choices, Inc. v. State Dept. of Health Services*, 182 Cal.App.4th 1661, 1672 (2010). Dr. Egge's third claim alleging that County, SCVMC, and Dr. Stirling are liable to her on a theory of promissory estoppel is fundamentally flawed for a host of reasons.

        1.    <u>The Elements of Promissory Have Not Been Pled Against the County and SCVMC.</u>

Dr. Egge claims that Dr. Stirling and the County entered into an "agreement." (Compl. ¶ 56.) Although the complaint does not specify the agreement, Dr. Egge presumably references Dr. Stirling's agreement to report suspected child abuse to CPS, which notably is an "agreement" that Dr. Egge conveyed to the Chair of the Pediatrics. (*See* Compl. ¶ 19.) And Dr. Egge claims that Dr. Stirling promised her that he would file this report in November and, then again, in December. (*Id*.¶ 57.) Dr. Egge claims that Dr. Stirling did not perform the promised act. (*Id*.¶59.) Under these alleged facts, because Dr. Egge is not alleging that the County or SCVMC promised her that it would make the CPS report and failed to do so, Dr. Egge cannot even make out the basic pleading elements of promissory estoppel against the County and SCVMC. Dr. Egge relied on a promise from Dr. Stirling, not the County or SCVMC. Accordingly, dismissal of the promissory-estoppel claim is warranted.

        2.    <u>The Elements of Promissory Estoppel Are Likewise Lacking For Dr. Stirling's Failure to Report Because Dr. Egge Did Not Reasonably Rely on His Promise.</u>

Dr. Egge admits that she knew in December – the month before the child's death – that Dr. Stirling had failed to fulfill the promise (that incidentally Dr. Egge – not Dr. Stirling – had conveyed to the Chair of Pediatrics) to file a CPS report. (Compl. ¶ 19.) As a physician, Dr. Egge is a mandated reporter. Cal Pen. Code §11165.7(a)(21). She admits that on November 17, 2015, she believed a CPS report should have been made. (Compl. ¶ 19.) And she admits that she knew as of December 22, 2015, that Dr. Stirling did not, in fact, make the promised CPS report. (*Id*. ¶ 20.) While Dr. Egge claims that she "reasonably relied on his statement that he would make the CPS report" in December (*Id*. ¶ 20), under the plain language of Penal Code section 11166(h), Dr. Egge could not "reasonably rely" on Dr. Stirling's December promise:

                When two or more persons, who are required to report, jointly have knowledge of a known or suspected instance of child abuse or neglect,

and when there is agreement among them, the telephone report may be made by a member of the team selected by mutual agreement and a single report may be made and signed by the selected member of the reporting team. ***Any member who has knowledge that the member designated to report has failed to do so shall thereafter make the report***. (Emphasis added).

By Dr. Egge's own admission she knew Dr. Stirling failed to make the report in December and, by law, she was required to do so herself, but she did not.

      3.   <u>No Case Supports Use of Promissory Estoppel in this Context, And The Use of It in This Context Cannot Be Supported.</u>

The notion that a promissory-estoppel claim could lie against any potential defendant under the circumstances alleged here has no support in the law. To start, estoppel is only rarely applicable against government and when applicable is usually against a government in its proprietary or private sphere. *Kappadahl v. Alcan Pac. Co.*, 222 Cal.App.2d 626 (1963) (county not estopped from filing a zoning map). For example, in *US Ecology, Inc. v. State*, 129 Cal.App.4th 887, 901–02 (2005), the court permitted a promissory estoppel claim to go forward against the State of California after it licensed US Ecology to operate a radioactive disposal facility and incurred millions of dollars in preparation but the State failed to secure the site from the federal government. This case bears no similarity to *US Ecology* or *Kappadahl*.

Additionally, promissory estoppel is an equitable doctrine that gives courts discretion to enforce a promise that would otherwise be unenforceable. *US Ecology*, 129 Cal.App.4th at 901–02. And generally a governmental agency may not be estopped by the conduct of its officers or employees. *Farell v. Placer City*, 23 Cal.2d 624, 627 (1944). Here the promise is solely of Dr. Stirling's making and Dr. Stirling's promise was otherwise enforceable. Dr. Stirling is a mandated reporter. Cal Pen. Code §11165.7(a)(21). His agreement to report the case to CPS was "otherwise unenforceable" because Penal Code section 11166, subdivision (a) "imposes a mandatory reporting requirement on individuals whose professions bring them into contact with children." *Planned Parenthood Affiliates v. Van de Kamp*, 181 Cal.App.3d 245, 258–259 (1986). The failure to report is enforceable because it is misdemeanor. Cal. Pen. Code §11166(c).

A promissory estoppel claim will only lie where "injustice can be avoided only by

20

enforcement of the promise," and "[t]he remedy granted for breach may be limited as justice requires." *US Ecology, Inc.*, 129 Cal. App. 4th at 904–05. Here, injustice would lie from allowing Dr. Egge to pursue an ill-fitting promissory estoppel claim when she too failed to report under the mandated child abuse reporting scheme.

        4.     <u>Immunity Precludes The Promissory Estoppel Claim.</u>

      Dr. Egge's promissory estoppel claim is not only invalid on its face, it also cannot be improved by amendment because even a reconstituted version would still be met with available government immunities. Contract liability is generally governed by California Government Code section 814, which provides: "Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." The California Supreme Court has instructed that "[s]ection 814 simply reaffirms the longstanding rule that governmental immunity does not encompass contractual liability." *City of Stockton v. Superior Court*, 42 Cal.4th 730, 741 (2007). Although the California Supreme Court has adopted the doctrine of promissory estoppel, it has rejected the notion that a "promise binding under this section is a contract." *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc*., 211 Cal. App. 4th 230, 248–49 (2012) (citing *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth*., 23 Cal. 4th 305, 310 (2000)). And courts have applied government immunities to promissory estoppel claims. *See Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 378 (2014) (holding that section 818.4 immunized city from promissory estoppel claim.); *see also Universal By-Prod., Inc. v. City of Modesto*, 43 Cal. App. 3d 145, 153 (1974) (applying immunities in 818.4 and 822.2 to "misrepresentation in breach of contract" claim).

      Courts must look to the essential nature of a claim when evaluating governmental immunity. *Roe v. State of California,* 94 Cal.App.4th 64, 69 (2001); *Janis v. California State Lottery Com.,* 68 Cal.App.4th 824, 830 (1998). Here, the nature of the right sued upon in the third claim is not for breach of a promise, but rather for acts or omissions that constitute violations of independent non-contractual duties. *See Khodayari v. Mashburn,* 200 Cal.App.4th 1184, 1190 (2011) (labeling a claim "breach of contract" did not control where the claim clearly sounded in legal malpractice and not contract). Here, there are clearly independent non-contractual duties to report suspicions of child

1  abuse.

2  Moreover, according to Dr. Egge's own allegations, it was Dr. Egge who represented to the

3  Chair of Pediatrics that Dr. Stirling would report and, thus, the County and SCVMC were under the

4  impression[9] – based on Dr. Egge's representation – that the matter would be reported to CPS. Dr.

5  Egge alleges that Dr. Stirling misrepresented that he would make a CPS report, and somehow seeks

6  to hold the County or SCVMC liable for this failure.

7  Government Code section 815 abolished common law tort liability for public entities.

8  *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 899 (2008). In *Burden v. County of Santa*

9  *Clara*, 81 Cal.App.4th 244 (2000), the court held that the County was immunized under Government

10  Code section 818.8 (immunity for misrepresentations of its employees) and, further, was not

11  vicariously liable for the misrepresentations of its employees under Section 815.2 (vicarious liability

12  for employees) because Government Code section 818.8 immunized employees for

13  misrepresentations unless there was "actual fraud, corruption, or actual malice." *Id.* at 251. Dr.

14  Egge has not made allegations of this sort against Dr. Stirling and, even if Dr. Egge were to amend

15  and do so, the County is still immune.[10] *Id.* at 253.

16  **D.    DR. EGGE'S FOURTH CLAIM FOR BREACH OF CONTRACT AGAINST ALL
       DEFENDANTS FAILS**

17

18  For a breach of contract claim, the plaintiff must allege four essential elements: (1) the

19  contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

20  the resulting damages to plaintiff. *Linder v. Thrifty Oil Co.,* 23 Cal.4th 429, 437 n.4 (2000). Dr.

21  Egge identifies the Medical Staff Bylaws as the contract between "plaintiff" and "defendants." Dr.

22  Egge's breach of contract claim fails because SCMVC's Medical Staff Bylaws are not a contract.

23  _____

24  [9] To the extent the Chair of Pediatrics communicated agreement regarding filing a report, that act is
25  immune. Notably, in the arena of child abuse reporting there is a broad protective umbrella of
    absolute immunity that extends to required reports and all subsequent reports and communications.
26  Cal. Pen. Code §11172(a); *Ferraro v. Chadwick*, 221 Cal.App.3d 86 (1990); *Watson v. Cty. of Santa*
    *Clara*, 468 F. Supp. 2d 1150, 1156 (N.D. Cal. 2007) (absolute immunity for reports and
27  communication regarding reporting to CPS).

   [10] Notably, Dr. Stirling would not be entitled to a defense from the County. *See* Gov. Code §
28  995.2(a)(2) (there is no duty to defend the employee against actions arising from the employee's
    actual fraud, corruption, or malice.)

                                    22

Her claim also fails because Dr. Egge does not plausibly plead any contract with the Defendants, what contractual provisions were allegedly breached, or the damages she suffered as a result of the alleged breach.

          1.       <u>Under California Law, Medical Staff Bylaws Only Create A Contract If They Expressly State So And SVMC's Bylaws Contain No Such Provision.</u>

In *O'Byrne v. Santa Monica-UCLA Medical Ctr.*, 94 Cal.App.4th 797, 810 (2001), the court considered an issue of first impression under California law: whether medical staff bylaws constitute a contract. In *O'Byrne,* the court noted that Sections 70701 and 70703 of the California Code of Regulations, title 22, required the Medical Center to appoint a medical staff, required the medical staff to adopt bylaws, and required the medical staff to abide by those bylaws. *Id*. at 808. Under these circumstances, the court reasoned that "there was no consideration given for the Bylaws— neither the Medical Center nor plaintiff conferred on the other any more than what was required by law." *Id*. In rejecting the notion that the bylaws created a contract, the court cited prior legislative language indicating the legislature had specifically stricken language that medical staff bylaws were contractual in during the amendment process, demonstrating a contrary legislative intent. *Id*. at 810. Lastly, the court noted that if the bylaws are incorporated into a separate employment contract between the hospital and the physician, a different question would be presented. *Id.*

The court in *Ennix v. Stanten*, 556 F. Supp. 2d 1073, 1083–84 (N.D. Cal. 2008) acknowledged the *O'Byrne* holding. The *Ennix* court went on to find a breach of contract claim viable because the physician otherwise had a contractual agreement with parties. *Id*.; *accord Janda v. Madera Community Hospital*, 16 F.Supp.2d 1181, 1186 (E.D. Cal 1998) (pre-*O'Byrne* case holding that decision to limit orthopedic department to select group breached employment contract.) *Ennix* and *Janda* are distinguishable here because Dr. Egge, like the plaintiff in *O'Byrne,* relies generically on the SCMVC's Medical Staff Bylaws, and as previously discussed (III.B.2.b), California law specifically rejects any claim that her employment relationship is contractual. *Miller*, 18 Cal. 3d at 813–814. More recently, the court in *Smith v. Adventist Health Sys./West*, 182 Cal. App. 4th 729, 752–53 (2010) confirmed this distinction by permitting a breach of contract claim with a private party only because the medical staff bylaws had an express provision stating that the

parties agreed that the "bylaws shall constitute part of the contractual relationship existing between the hospital and the medical staff members." *Id*. at 751. SCMVC's Medical Staff Bylaws have no such provision and, thus, fall squarely within *O'Byrne*. Instead, under Section 2.6 of the Bylaws, a provider's Medical Staff membership "automatically terminates, without the right to a review, hearing, or other appeal procedures set forth in the BYLAWS [] when the provider is no longer employed by the County." (Medical Staff Bylaws, Ex. B to RJN.) Because Dr. Egge was terminated from her employment (Compl. ¶ 25) any rights (contractual or not) she had under the Bylaws did not extend to her employment.

2. Dr. Egge Fails to Allege Sufficient Facts to Support a Breach of Contract Claim Under *Iqbal*.

Setting aside the fact that the Medical Staff Bylaws are not a contract, they do not specify a relationship between Dr. Egge and the individual Defendants and for that reason alone this claim fails as to every individual defendant. While the allegations against Dr. Nguyen include that she is responsible for enforcing the Medical Staff Bylaws, these allegations do not state a claim that she is personally in contract with Dr. Egge. Nor does Dr. Egge plead any plausible basis for her claim that the Medical Staff Bylaws are a contract between herself and Dr. Smith.

Notably, Dr. Egge could not suggest that her firing was a breach of a contract because as discussed above, "it is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law." *Miller*, 18 Cal. 3d at 813–814. Further, as discussed above (III.B.2.c), Dr. Egge's complaint misreads the meeting provision under Section 13.2-2 of the Bylaws. (Medical Staff Bylaws, Ex. B to RJN.) The hearing procedures are set forth in Article 14 of the Bylaws, and Dr. Egge's complaint completely fails to address whether any of these provisions were contractual and, if so, breached.

To the extent Dr. Egge argues (or seeks to amend) that the alleged breach and resulting damages are based on statements made as part of her peer review process, such as submission of the 805 report, such a claim is improper and should be stricken pursuant to Cal.Civ.Code § 425.16, *et*

24

*seq.* California's Anti-SLAPP procedure applies to a physician's state law claims for damages arising out statements made as part of a hospital's peer review committee process. *Kibler v. N. Inyo Cty. Local Hosp. Dist*., 39 Cal. 4th 192, 196, (2006), *as modified* (July 20, 2006); *see also Park v. Bd. of Trustees of California State Univ*., 2 Cal. 5th 1057, 1070 (2017).

Because the Bylaws are not a contract, and because Dr. Egge fails to plausibly allege any contract with any of the Defendants, or any breach, or any resulting damages, her breach of contract claim should be dismissed.

## IV.

## CONCLUSION

Defendants County of Santa Clara, Phuong Nguyen and Jeffrey Smith respectfully request that this Court dismiss Dr. Egge's first, second, third, and fourth claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Dated: June 27, 2017                     Respectfully submitted,

                                         JAMES R. WILLIAMS
                                         COUNTY COUNSEL


                                 By:  /s/  Bryan K. Anderson
                                         ARYN PAIGE HARRIS
                                         BRYAN K. ANDERSON
                                         Deputy County Counsel

                                         Attorneys for Defendants
                                         COUNTY OF SANTA CLARA (erroneously
                                         sued herein as SANTA CLARA VALLEY
                                         MEDICAL CENTER); PHUONG NGUYEN,
                                         M.D.; and JEFFREY SMITH, M.D.

1570121