JAMES McMANIS (40958) jmcmanis@mcmanislaw.com
TYLER ATKINSON (257997) tatkinson@mcmanislaw.com
HILARY WEDDELL (293276) hweddell@mcmanislaw.com
JAMES GIACCHETTI (307117) jgiacchetti@mcmanislaw.com
McMANIS FAULKNER
50 W. San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244

Attorneys for Plaintiff,
MELISSA EGGE, M.D.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MELISSA EGGE, M.D.,<br><br>    Plaintiff,<br><br>  vs.<br><br>COUNTY OF SANTA CLARA, a public entity, SANTA CLARA VALLEY MEDICAL CENTER, JOHN STIRLING, M.D., PHUONG NGUYEN, M.D., JEFFREY SMITH, M.D. and DOES 1-50, inclusive,<br><br>    Defendants. | Case No. 17-CV-02842-BLF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**Fed. R. Civ. P., 8(a), 12(b)(6)**<br><br>Date:  November 16, 2017<br>Time:  9:00 a.m.<br>Ctrm:  3<br>Judge:  Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

LEGAL ARGUMENT ..................................................................................................2

I.    THE FACTS ALLEGED SUPPORT PLAUSIBLE LEGAL CLAIMS. ......................2

II.   PLAINTIFF HAS STATED CLAIMS FOR DUE PROCESS
      VIOLATIONS UNDER THE FOURTEENTH AMENDMENT................................3

      A.    Dr. Egge Had A Property Interest In Continued Employment With
            The County............................................................................................3

      B.    Dr. Egge Had A Liberty Interest In Her Standing In The Community
            And In Her Right To Work In Her Chosen Profession..........................4

      C.    Plaintiff Has Alleged Sufficient Facts to Support Her Stigma-Plus
            Claim.....................................................................................................5

            1.    Plaintiff Adequately Alleged Stigmatizing Statements
                  Injurious to Her Reputation. ......................................................6

            2.    Plaintiff Adequately Alleged Stigmatizing Statements That
                  Were Published to Third Parties. ...............................................8

            3.    Close Temporal Relation of False Statements and
                  Termination................................................................................8

            4.    The Elements Of The Claim May Be Committed By
                  Different Actors ..........................................................................9

            5.    Plaintiff Was Not Required to Allege She Requested a
                  Name-Clearing Hearing, And the Hearing Provided for by
                  the SCVMC Bylaws Is Inadequate ..........................................10

      D.    Plaintiff Has Alleged Sufficient Facts to Support Her Substantive
            Due Process Claim...............................................................................11

      E.    Dr. Egge's Substantive Due Process Claim Is Not Subsumed By
            Her Stigma-Plus Claim. ......................................................................12

      F.    Plaintiff Has Sufficiently Pled Section 1983 Liability Against the
            County..................................................................................................13

            1.    Final Decision by a Municipal Policymaker.............................14

            2.    Ratification of a Subordinate's Action .....................................14

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND
JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

3. Plaintiff Has Alleged Facts Sufficient to Impose Liability on the County Under Both Theories ...........................................14

III. PLAINTIFF HAS STATED A CLAIM FOR PROMISSORY ESTOPPEL................15

    A. Elements Of A Promissory Estoppel Claim........................................15

        1. Dr. Stirling Made a Clear and Unambiguous Promise to Dr. Egge That He Would Make the Report.................................15

        2. Dr. Egge's Reliance on Dr. Stirling's Promise was Reasonable and Foreseeable ............................................16

        3. Equity Requires Enforcement Of Dr. Stirling's Promise....................17

    B. County Liability Arises Out Of An Agency Relationship ...............................17

    C. Qualified Immunity Does Not Apply ..............................................18

IV. PLAINTIFF HAS STATED A CLAIM FOR BREACH OF CONTRACT................20

    A. Plaintiff Alleged the Existence of a Contract ....................................20

    B. Plaintiff Alleged Performance and Breach of the Contract ............................22

    C. Plaintiff Alleged Damages Resulting from Breach .........................23

CONCLUSION.....................................................................24

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

# TABLE OF AUTHORITIES

## Cases

*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218 ............................................ 17

*Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136 (N.D. Cal. 2015) .............. 20, 23

*Albright v. Oliver*, 510 U.S. 266 (1994) .......................................................... 13

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) .................................... 3, 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 2, 3, 20, 23

*Bishop v. Tice*, 622 F.2d 349 (8th Cir. 1980) ..................................................... 9

*Blatt v. University of Southern Calif.* (1970) 5 Cal.App.3d 935 ................................ 17

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ................................................. 4, 7

*Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093 (9th Cir. 1981) ............... 4, 6

*Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142 (E.D. Cal. 2009) ................ 23

*Burden v. Cty. of Santa Clara*, 81 Cal.App.4th 244 (2000) ..................................... 20

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ................................... 2

*Campanelli v. Bockrath*, 100 F.3d 1476 (9th Cir. 1996) .......................................... 8

*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371 (1990) ............ 23

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) ................................................ 14

*City of Geneseo. v. Utilities Plus,* 533 F.3d 608 (8th Cir. 2008) ................................ 17

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ........................................... 14

*Cooper v. Dupnik*, 924 F.2d 1520 (9th Cir. 1991) ................................................ 5

*Coprich v. Superior Court* (2000) 80 Cal.App.4th 1081 .......................................... 23

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ....................................... 11, 12

*Daniels v. Williams*, 474 U.S. 327 (1986) ...................................................... 11

*Dice v. City of Grand Coulee*, No. 11-CV-296-JLQ, 2012 WL 4793718

    (E.D. Wash. Oct. 9, 2012)................................................................ 12

*Div. of Labor Law Enf't v. Transpacific Transportation Co.*,

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND
JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

69 Cal. App. 3d 268 (1977) ................................................................... 17

*Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623 (2d Cir. 1996) ..................... 7

*Drennan v. Star Paving* (1958) 51 Cal.2d 409 ................................................ 15, 17

*Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005) ............................................... 7

*Eberhard v. California Highway Patrol*, 73 F. Supp. 3d 1122 (N.D. Cal. 2014) ...................... 5

*Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985 (9th Cir. 2007) ......................... 4, 5

*Ennix v. Stanten,* 556 F. Supp. 2d 1181 (N.D. Cal. 2008) ..................................... 21, 22

*Faulks v. Wells Fargo & Co.*, No. 13-CV-02871-MEJ, 2017 WL 492673
  (N.D. Cal. Feb. 7, 2017) ............................................................. 15

*Federation of African Am. Contrs. v. City of Oakland,* 96 F.3d 1204 (9th Cir.1996) ................ 14

*Frances T. v. Village Green Owners Ass'n,* 42 Cal.3d 490 (1986) .......................... 20, 23

*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) ........................................ 13, 14

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ..................................................... 10

*Goldman v. SunBridge Healthcare* (2013) LLC, 220 Cal.App.4th 1160 ................................ 18

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................... 12, 13

*Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411 ................................... 16

*Greenberg v. Sala*, 822 F.2d 882 (9th Cir.1987) ............................................ 18

*Greene v. McElroy*, 360 U.S. 474 (1959) ...................................................... 4

*Groten v. California*, 251 F.3d 844 (9th Cir. 2001) ......................................... 19

*H.W. Stanfield Constr. Corp. v. Robert McMullan & Son, Inc.* (1971) 14 Cal.App.3d 848 ........ 16

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) .................................................. 3

*Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114 (9th Cir. 2013) ...................... 3

*Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 977047
  (N.D. Cal. Mar. 14, 2017) ......................................................... 13, 14, 19

*Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842 (N.D. Cal. 2007) ..................... 18

*Holmes v. Town of E. Lyme*, 866 F. Supp. 2d 108 (D. Conn. 2012) ................................ 6

*House v. State of California*, 119 Cal.App.3d 861 (1981) ..................................... 18

*Hufford v. McEnaney*, 249 F.3d 1142 (9th Cir. 2001) ........................................ 13

iv

1  *Janda v. Madera Community Hosp*. 16 F.Supp.2d 1181 (E.D. Cal. 1998) ............................ 21, 22

2  *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989) ..................................................... 14

3  *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935 ..................................................... 16

4  *Learned v. Bellevue,* 860 F.2d 928 (9th Cir. 1988) ......................................................... 8

5  *Mathews v. Eldridge,* 424 U.S. 319 (1976) .................................................................. 10

6  *McGhee v. Draper,* 639 F.2d 639 (10th Cir. 1981) ......................................................... 9

7  *Merritt v. Mackey,* 827 F.2d 1368 (9th Cir. 1987) ......................................................... 4

8  *Midland Pac. Bldg. Corp. v. King* (2007) 157 Cal.App.4th 264 ...................................... 23

9  *Mohamed v. Jeppesen Dataplan, Inc.,* 614 F.3d 1070 (9th Cir. 2010) ............................. 3

10 *Monell v. Department of Social Services,* 436 U.S. 658 (1978) ............................ 3, 13, 14

11 *Morley v. Walker,* 175 F.3d 756 (9th Cir. 1999) ........................................................... 19

12 *Northern Cal. Dist. Council of Hod Carriers v. Pennsylvania Pipeline, Inc.,*

13      103 Cal.App.3d 163 (1980) ...................................................................................... 18

14 *O'Byrne v. Santa Monica-UCLA Med. Ctr.,* 94 Cal. App. 4th 797 (2001) ...................... 21, 22

15 *Oasis W. Realty, LLC v. Goldman,* 51 Cal.4th 811 (2011) ............................................. 20

16 *Orozco v. Cty. of Monterey,* 941 F.Supp. 930 (N.D. Cal. 1996) ..................................... 8

17 *Patterson v. City of Utica,* 370 F.3d 322 (2d Cir. 2004) ..................................... 6, 10, 11

18 *Peter Turner v. City & Cty. of San Francisco*, No. C-11-1427 EMC,

19      2012 WL 6631490 (N.D. Cal. Dec. 19, 2012) ......................................................... 8

20 *Price v. Sery,* 513 F.3d 962 (9th Cir. 2008) .................................................................. 13

21 *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665 ...................................... 15

22 *Reyes v. Wells Fargo Bank, N.A.* (N.D.Cal. 2011) No. C–10–01667, 2011 WL 30759 ........... 15

23 *Scheuer v. Rhodes,* 416 U.S. 232 (1974) ..................................................................... 3

24 *Segal v. City of New York,* 459 F.3d 207 (2d Cir. 2006) ........................................... 6, 7

25 *Siegert v. Gilley* 500 U.S. 226 (1991) ........................................................................ 8

26 *Spang v. Katonah-Lewisboro Union Free Sch. Dist.,* 626 F. Supp. 2d 389 (S.D.N.Y. 2009)........ 7

27 *Stonebrae, L.P. v. Toll Bros., Inc.,* No. C08–0221 EMC,

28      2009 WL 1082067 (N.D. Cal. 2009).......................................................................... 23

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND
JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

*Tibbetts v. Kulongoski*, 567 F.3d 529 (9th Cir. 2009) ........................................................ 6

*Treglia v. Kernan*, 2013 WL 4427253 (N.D. Cal. Aug. 15, 2013)......................................... 19

*Ulrich v. City and County of San Francisco*, 308 F.3d 968 (9th Cir. 2002)........................... 5, 13

*Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005)........................................................................ 9, 13

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .............................................................. 11

*West v. Hunt Food, Inc.* 101 Cal.App.2d 597 (1951) ......................................................... 16

*Wheaton v. Webb-Petett*, 931 F.2d 613 (9th Cir. 1991)....................................................... 6

*Willbanks v. Smith County, Texas*, 661 F.Supp. 212 (E.D. Tex. 1987) .................................. 8

*WMX Techs., Inc. v. Miller*, 197 F.3d 367 (9th Cir. 1999) ................................................. 5

**Statutes**

Government Code section 815.2........................................................................................ 20

Government Code section 818.8........................................................................................ 20

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

## **OPPOSITION TO MOTION TO DISMISS**

Plaintiff, Dr. Melissa Egge ("plaintiff" or "Dr. Egge"), was hired by the County of Santa Clara ("the County") on or about July 1, 2011, as a Child Abuse Pediatrician at the Santa Clara Valley Medical Center ("SCVMC"). (Complaint, ¶ 13.) At all relevant times, Dr. Egge reported to Dr. John Stirling ("Dr. Stirling"), the Director of the Center for Child Protection. (*Id.*) Among her duties, Dr. Egge helped to detect, evaluate, and report situations of potential child abuse. Her work literally saved lives. Throughout her tenure at SCVMC, Dr. Egge received glowing reviews. (Complaint, p. 1.)

On July 3, 2015, Dr. Egge was called by an intern at SCVMC regarding a young boy who sustained fractures in both elbows, allegedly the result of a fall. (Complaint, ¶¶14-15.) No x-rays were available and Dr. Egge was not asked to examine the child. (Complaint, ¶ 16.) Based on the information provided to her at that point, Dr. Egge did not have a reasonable suspicion of child abuse, and did not believe a report to Child Protective Services was required. (Complaint, ¶ 15.) After the brief call, Dr. Egge had no further clinical involvement with the boy. (Complaint, ¶ 16.)

Over the ensuing days, the boy's treating physicians at SCVMC, however, discovered the child had suffered additional bone fractures, and the child ultimately underwent orthopedic surgery. (Complaint, ¶ 17.) Dr. Stirling consulted on the case while the boy was an inpatient at SCVMC. (*Id.*) Eventually, the child was discharged to go home with his mother. (*Id.*) The following year, the child was murdered by his mother's boyfriend. (Complaint, ¶ 21.) When Dr. Egge learned of the boy's death, she spoke out about systemic failures at SCVMC connected with the case, and she was fired for speaking up. (Complaint, ¶¶ 22-27.)

Defendants sacrificed Dr. Egge's career and reputation to make her a scapegoat for the boy's death and to lay blame on her for the very systemic failures she tried to address with the hospital. (Complaint, ¶ 22-26.) After her termination, defendants leaked confidential details and inaccurate statements to the press, publicly blaming Dr. Egge for the boy's death for the purpose

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

of deflecting criticism of institutional incompetence.  (Complaint, ¶ 27.)  In the process, defendants severely harmed Dr. Egge's good name, reputation, honor, and integrity.  (*Id.*)

On May 17, 2017, Dr. Egge filed a Complaint for Damages ("complaint") for her unjust and illegal termination, and defendants' conduct immediately thereafter.  Her complaint includes over ten (10) pages of detailed factual allegations in support of her legal claims, among them: defendants deprived her of procedural and substantive due process rights; Dr. Egge's supervisor broke his promise to her; and defendants breached their contract by failing to act in accordance with the Bylaws controlling Dr. Egge's employment relationship with defendants.

Defendants move to dismiss several causes of action for their purported failure to state a claim upon which relief can be granted.  However, defendants are asking the Court to accept their facts and interpretation of the evidence, which is not appropriate at the pleadings stage.  Dr. Egge has alleged more than sufficient facts to support her claims.  Accordingly, defendants' motion to dismiss should be denied, and discovery allowed to proceed.

## LEGAL ARGUMENT

### I.  THE FACTS ALLEGED SUPPORT PLAUSIBLE LEGAL CLAIMS.

Federal Rule of Civil Procedure 8(a) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face," particular detail is not necessary.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  On a motion to dismiss, the court must read and construe the complaint in the light most favorable to the non-moving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  "When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.  "Facial plausibility" requires a plaintiff to plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1121-22 (9th Cir. 2013).

Critically, in reviewing the sufficiency of a complaint on a motion to dismiss, "before the reception of any evidence either by affidavit or admissions, [the court's] task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982); *see also Mohamed v. Jeppesen Dataplan, Inc*., 614 F.3d 1070, 1100 (9th Cir. 2010). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. A plaintiff need only set forth allegations sufficient to "raise a right to relief above the speculative level," and plead "enough facts to raise a reasonable expectation that discovery will reveal evidence." *Twombly,* 550 U.S. at 545, 556. The central task for courts considering motions to dismiss is to assess whether the complaint "nudge[s] [plaintiff's] claims across the line from the conceivable to plausible." *Id.* at 570.

Plaintiff's complaint alleges facts sufficient to show that: defendants stigmatized her in leaking erroneous statements about her to the press, and by voluntarily submitting an unnecessary 805 report; defendants violated her substantive due process rights; pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the County is subject to liability under Section 1983; defendants failed to uphold the terms of the SCVMC Medical Staff Bylaws; and Dr. Stirling, acting on behalf of the County, failed to honor his promise to Dr. Egge. As such, Dr. Egge has stated valid claims and she should be permitted to conduct discovery to support her allegations.

## II. PLAINTIFF HAS STATED CLAIMS FOR DUE PROCESS VIOLATIONS UNDER THE FOURTEENTH AMENDMENT.

### A. Dr. Egge Had A Property Interest In Continued Employment With The County.

In any due process challenge, the first question is whether the plaintiff has been deprived of a protected "property" or "liberty" interest. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40,

59 (1999).  One recognized property interest is the interest in continued public employment.

*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("*Roth*").

Here, there is no dispute that plaintiff was terminated from public employment.  Dr. Egge was hired by the County of Santa Clara on or about July 1, 2011, as a Suspected Child Abuse and Neglect ("SCAN") physician at SCVMC.  (Complaint, ¶ 13.)  On March 11, 2016, Dr. Egge was placed on administrative leave.  (Complaint, ¶ 25.)   On April 21, 2016, the Medical Executive Committee of SCVMC recommended a 6-month summary suspension of Dr. Egge's clinical privileges and medical staff memberships.  (*Id.*)  The very next day, April 22, 2016, Dr. Jeffrey Smith ("Dr. Smith"), as CEO of Santa Clara County, terminated Dr. Egge's employment.  (*Id.*)

Defendants' argument that Dr. Egge lacks a property interest because, as an "unclassified" employee, Article 11 of the County's Ordinance Code does not apply to her employment, is erroneous.  (Motion to Dismiss, 10:2-21).  Defendants misconstrue the Code.  Section A25-34 only provides that "these rules shall apply in their entirety to all employees in the classified service, and Articles 1, 2, 6, 7, and 8 as set forth in this chapter shall apply to all employees in the unclassified service."  Nowhere in the Municipal Code does it affirmatively state that Article 11 does not apply to unclassified employees.  To the contrary, because there is at least a factual question as to whether Article 11 applies to Dr. Egge, she has stated a claim that she was deprived of a protected interest.

**B.**   **Dr. Egge Had A Liberty Interest In Her Standing In The Community And In Her Right To Work In Her Chosen Profession.**

An individual has a liberty interest in employment protected by the Due Process Clause if dismissal is (1) "for reasons that might seriously damage his standing in the community," or (2) "if the dismissal effectively precludes future work in the individual's chosen profession."  *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir. 1987) (*citing Bollow v. Fed. Reserve Bank,* 650 F.2d 1093, 1100 (9th Cir. 1981), and *Greene v. McElroy*, 360 U.S. 474 (1959)).  In addition, "the right to pursue a chosen profession is protected … in the public employment context."  *Engquist v. Oregon Dep't of Agriculture*, 478 F.3d 985, 998 (9th Cir. 2007).  Indeed, government

1  employees are protected from government conduct that "effectively ban[s] a person from a

2  profession." *Id.*

3      While defendants cite *Engquist v. Oregon Department of Agriculture*, 478 F.3d 985 (9th

4  Cir. 2007) to suggest that this court should not review defendants' employment decisions,

5  reference to this case is misplaced. There, the court simply held that the class-of-one theory of

6  equal protection, under which a plaintiff alleges that she has been intentionally treated differently

7  from others similarly situated and that there is no rational basis for the difference in treatment, is

8  inapplicable to decisions made by public employers with regard to their employees. *Id.*

9      **C.    Plaintiff Has Alleged Sufficient Facts to Support Her Stigma-Plus Claim.**

10     Where a complaint alleges that a state action caused such damage to the plaintiff's

11  reputation so as to harm other protected rights, courts have recognized a cause of action arising

12  under the Due Process Clause that has become known as a "stigma-plus" claim. *Ulrich v. City &*

13  *Cty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002); *Eberhard v. California Highway*

14  *Patrol*, 73 F. Supp. 3d 1122, 1130 (N.D. Cal. 2014). To state a stigma-plus claim, a plaintiff

15  must allege that a "state action not only caused the stigma of a damaged reputation, but also that

16  the state action deprived the plaintiff of a protected liberty or property interest or a status

17  recognized by the state." *Eberhard,* 73 F. Supp. 3d at 1130 (*citing WMX Techs., Inc. v. Miller*,

18  197 F.3d 367, 376 (9th Cir. 1999)). A plaintiff satisfies the "stigma-plus" test by alleging that

19  the injury to reputation was "inflicted in connection with a federally protected right (e.g.,

20  "defamation in the course of termination of public employment by the state)." *Eberhard,* 73 F.

21  Supp. 3d at 1130 (*citing Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991)).

22     Having been terminated from protected government employment, a stigma-plus case is

23  made out if three elements are in place: "'First … that the government made stigmatizing

24  statements about [Dr. Egge] – statements that call into question [Dr. Egge's] good name,

25  reputation, honor, or integrity …. Second, [Dr. Egge] must prove these stigmatizing statements

26  were made public. Third, [Dr. Egge] must show that the stigmatizing statements were made

27  concurrently with, or in close temporal relationship to, [Dr. Egge's] dismissal from government

28

5

employment.'" *See Holmes v. Town of E. Lyme*, 866 F. Supp. 2d 108, 125 (D. Conn. 2012) (*citing Segal v. City of New York*, 459 F.3d 207, 212-13 (2d Cir. 2006) (internal citations omitted)); *see also Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004). Each of these elements is alleged in the complaint.

1. Plaintiff Adequately Alleged Stigmatizing Statements Injurious to Her Reputation.

The Ninth Circuit has concluded that a plaintiff's constitutional liberty interest is implicated where the "accusations against an employee … seriously damage his community standing and associations or foreclose his freedom to pursue other employment." *Wheaton v. Webb-Petett*, 931 F.2d 613, 617 (9th Cir. 1991); *see also Bollow,* 650 F.2d at 1101 (9th Cir. 1981); *Tibbetts v. Kulongoski*, 567 F.3d 529, 536 (9th Cir. 2009) ("[A] public employer can violate an employee's rights by terminating the employee if in so doing, the employer makes a charge 'that might seriously damage [the terminated employee's] standing and associations in his community' or 'impose[s] on [a terminated employee] a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities.'").

At the pleading stage, "[a] plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false." *Patterson,* 370 F.3d at 330. "Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest." *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926, n.6 (9th Cir. 2013). In *Blantz*, the plaintiff alleged the she was deprived of a liberty interest in her employment as a nurse without due process as a result of the negative job references, which she claimed effectively barred her from any employment. There, the court accepted as true, for purposes of the motion to dismiss, allegations made "on information and belief, that the poor recommendation she received included 'unwarranted and false information concerning her reputation for honesty and/or morality.'" *Blantz*, 727 F.3d at 926, n.6. Such facts were severe enough to constitute an alleged deprivation. The court went on to explain that a "public employer can violate an employee's rights by terminating the employee if in so doing, the employer makes a charge 'that might seriously damage [the terminated employee's] standing

6

and associations in his community' or 'impose[s] on [a terminated employee] a stigma or other

disability that foreclose[s] his freedom to take advantage of other opportunities." *Id*. at 925

(citations omitted).

 As noted by other circuits, "statements that 'denigrate the employee's competence as a

professional and impugn the employee's professional reputation in such a fashion as to

effectively put a significant roadblock in that employee's continued ability to practice his or her

profession' will satisfy the stigma requirement." *Segal,* 459 F.3d at 212 (*quoting Donato v.*

*Plainview–Old Bethpage Cent. Sch. Dist*., 96 F.3d 623, 630–31 (2d Cir. 1996)); *see also Spang*

*v. Katonah-Lewisboro Union Free Sch. Dist*., 626 F. Supp. 2d 389, 396 (S.D.N.Y 2009)

(concluding that a complaint which alleged the "denigration of [the plaintiff's] professional

competence [and thus] has foreclosed future business opportunities for [the plaintiff]" adequately

pled a stigma-plus claim). Damage to one's standing in the community can be accomplished via

falsehoods or allegation that call into question an individual's good name, reputation, or

integrity. *Roth,* 408 U.S. at 573; *see also Dupuy v. Samuels*, 397 F.3d 493, 513-14 (7th Cir.

2005) (labeling a person a "child abuser" calls into question his good name, reputation, honor, or

integrity).

 Plaintiff has pled that defendants' stigmatizing statements resulted in a deprivation of her

liberty interest in employment. (Complaint, ¶ 27.) Dr. Egge alleges that following the child's

death, defendants leaked erroneous information regarding the failure to report and Dr. Egge's

termination to the press to deflect criticism and to distract attention from SCVMC's leadership

and deficient procedures. (Complaint, ¶ 27.) The complaint alleges that these communications

made to the press concerning Dr. Egge were false, and these false and misleading statements

stigmatized and defamed Dr. Egge. (*Id*.) Dr. Egge was subjected to ridicule and scorn in the

community, and in the medical profession, because of these untrue statements. (Complaint, ¶

35.) These untrue statements to local media outlets seriously disparaged Dr. Egge's professional

fitness, and prevented Dr. Egge from working in her field. (Complaint, ¶¶ 27, 33, 42.)

///

Plaintiff's complaint alleges the leak of false and stigmatizing information about her to the media, in addition to unnecessarily filing an 805 report, to support a stigma-plus due process claim. This act made such a clear and negative statement about plaintiff that it crippled her ability to earn a living and stigmatized her reputation beyond repair. *See Peter Turner v. City & Cty. of San Francisco*, No. C-11-1427 EMC, 2012 WL 6631490, at *6 (N.D. Cal. Dec. 19, 2012). Plaintiff has alleged reputational damage that is directly attributable to the defendants' stigmatizing statements.

### 2. Plaintiff Adequately Alleged Stigmatizing Statements That Were Published to Third Parties.

In order for plaintiff to satisfy the "publication" requirement, a plaintiff must plead that the defendants published false and stigmatizing information to the public. *Orozco v. Cty. of Monterey*, 941 F.Supp. 930, 934-36 (N.D. Cal. 1996); *see Learned v. Bellevue*, 860 F.2d 928, 933 (9th Cir. 1988) (defamatory remarks that do not go beyond others employed by department do not satisfy "publication" requirement); *Willbanks v. Smith County, Texas*, 661 F.Supp. 212, 217 (E.D. Tex. 1987) (liberty interest not implicated if allegedly false charges were not published outside the government agency).

Defendants claim that plaintiff's complaint does not allege publication of a stigmatizing statement. (Motion to Dismiss, 6:14-21.) Such is not the case. Plaintiff has alleged publication. Plaintiff alleged that defendants published statements to the media, which were then disseminated to the general public, subjecting Dr. Egge to ridicule and scorn in her community, and the medical profession. (Complaint, ¶ 27.) Thus, plaintiff has satisfied the "publication" pleading requirement.

### 3. Close Temporal Relation of False Statements and Termination.

Additionally, a plaintiff must allege that the stigmatizing was "substantially false" and "must occur in conjunction with the termination of employment." *Peter Turner*, 2012 WL 6631490, at *6 (*citing Campanelli v. Bockrath*, 100 F.3d 1476, 1482 (9th Cir. 1996) and *Siegert v. Gilley* 500 U.S. 226, 234 (1991)). Plaintiff has alleged sufficient facts to meet these requirements.

8

1    Dr. Egge alleges that on March 11, 2016, she was put on administrative leave.

2 (Complaint, ¶ 25.)  On April 21, 2016, the Medical Executive Committee of SCVMC

3 recommended a 6-month summary suspension of Dr. Egge's clinical privileges and medical staff

4 memberships.  (Complaint, ¶ 25.)  The next day, April 22, 2016, Dr. Smith terminated Dr.

5 Egge's employment.  (*Id.*)  In light of the child's death, the press criticized SCVMC.

6 (Complaint, ¶ 27.)  To deflect criticism and to distract attention from SCVMC's leadership and

7 deficient procedures, which were the true cause of the failure to report this case to Child

8 Protective Services, the County disseminated accusations to the press to blame Dr. Egge for the

9 death of the child.  (*Id.*)  The termination of Dr. Egge's employment, and the stigmatizing

10 statements made to the press, are alleged to have occurred in close temporal proximity.

11                    4.    The Elements Of The Claim May Be Committed By Different Actors.

12            Defendants' assertion that plaintiff must allege that every act giving rise to the claim

13 must be committed by the same state actor (Motion to Dismiss, 12:14-24), is misplaced.  There is

14 no consensus among circuits on whether the "stigma" and "plus" must be committed by the same

15 actor.  *See*, *e.g.*, *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981) ("Typically, when one's

16 liberty interest is allegedly infringed upon by a discharge from employment, the termination or

17 non-renewal will either explicitly state the stigmatizing factors or implicitly ratify some other

18 stigmatizing allegations. Thus, the discharge will either cause or contribute to the alleged

19 defamation."); *Bishop v. Tice*, 622 F.2d 349, 352–54 (8th Cir. 1980) (a valid claim for

20 deprivation of plaintiff's liberty interest was made where two defendants made stigmatizing

21 statements, at the direction of a third defendant, and the third defendant then denied the plaintiff

22 administrative remedies); *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005) (holding that stringent

23 "source parity" in the "origin of both the 'stigma' and the 'plus' is not required to state the

24 infringement of a 'stigma-plus' liberty interest.").

25            Nevertheless, plaintiff has alleged that Dr. Phuong Nguyen ("Dr. Nguyen") and Dr.

26 Smith both personally participated in the stigmatizing acts.  Plaintiff's complaint alleges Dr.

27 Smith and Dr. Nguyen, both of whom had final policymaking authority for the County and

28

SCVMC, knew of and approved these unlawful acts, pursuant to a widespread and longstanding practice and custom of the County. (Complaint, ¶¶ 7, 8, 43-45, 52-54.) Each defendant was aware that the other defendants planned to commit these wrongful acts, and agreed and intended that these acts be committed. (Complaint, ¶ 11.) Each defendant knew that these wrongful acts were committed by the other defendants, and gave substantial assistance and encouragement in furtherance of these acts. (Complaint, ¶ 12.)

5. <u>Plaintiff Was Not Required to Allege She Requested a Name-Clearing Hearing, and the Hearing Provided for by the SCVMC Bylaws is Inadequate</u>.

Defendants concede that a ***remedy*** for a violation of due process in this context – not an element of a stigma-plus claim – is the provision of a name-clearing hearing. (Motion to Dismiss, 10:23-26.) Furthermore, in Footnote 5 of their motion, defendants concede that district courts in this circuit have suggested that a plaintiff ***need not request a name-clearing hearing as an element of a stigma-plus claim***. (Motion to Dismiss, 12:12, n 5.)

In any event, the "name-clearing hearing" provided by the SCVMC bylaws will not satisfy due process. "A name-clearing hearing must conform to the requirements of the Due Process Clause. The fundamental requirement of the Due Process Clause is that an individual be given the opportunity to be heard at 'a meaningful time and in a meaningful manner.'" *Patterson v. City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004) (*quoting Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)).

In determining if the procedures used are sufficient to meet constitutional muster, the court considers: "(1) the nature of the interest affected by the official action; (2) the government's interest; and (3) the risk of error and the effect, if any, of additional safeguards." *Patterson,* 370 F.3d at 336 (*citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under the third prong, one "examine[s] the risk of erroneous deprivation of plaintiff's rights that the government creates through the process it offers[]." *Patterson*, 370 F.3d at 336.

///

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

An internal, nonpublicized decision would not be sufficient to clear Dr. Egge's name since those who had read the newspaper articles would not be made aware of any reversal by the County. Simply put, a non-public hearing, regardless of the result, still had a "substantial risk that the stigma against plaintiff would remain …." *Id.* at 337. In such circumstances, the hearing offered is inadequate. *Id.* The administrative hearing afforded to Dr. Egge in the Bylaws is not sufficient due process. Finding as much would be contrary to the entire purpose of requiring that Dr. Egge be heard in "a meaningful time and in a meaningful manner." *See id.* at 337-38 (declining to remand the case back to district court for a name-clearing hearing because it was "unlikely that a proper name-clearing hearing would, at the present time, reverse any ill effects suffered by plaintiff from the inadequacy of the former hearing.").

### D. Plaintiff Has Alleged Sufficient Facts To Support Her Substantive Due Process Claim.

Substantive due process protects individuals against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis* ("*Lewis*"), 523 U.S. 833, 846 (1998). To evaluate a substantive due process claim, the first step is to identify a fundamental life, liberty, or property interest that has been infringed by government action. *Washington v. Glucksberg*, 521 U.S. 702, 719-21 (1997). Here, as discussed above, defendants have infringed upon Dr. Egge's property and liberty interests.

Once an interest has been identified, the next step is to analyze whether government action was so egregious and lacking in justification as to be "arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 845-46. An action violates substantive due process if it fails to substantially advance a legitimate government interest. *Id.* at 845-46 (*citing Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

Under the "shocks the conscience" test, when officials with the luxury to make unhurried judgments and "extended opportunities to do better" nevertheless exhibit "failure even to care, indifference is truly shocking." *Lewis*, 523 U.S. at 847, 853. The "shocks the conscience" analysis is necessarily fact-based and inappropriate for resolution on the County's motion to dismiss. *Id.* at 850 ("[O]ur concern with preserving the constitutional proportions of substantive

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

1  due process demands an exact analysis of the circumstances before any abuse of power is

2  condemned as conscience shocking.").

3      Here, the County demonstrated shocking indifference to Dr. Egge's rights.  Dr. Egge has

4  alleged the reason she was terminated, and the motive behind defendants' publication of

5  stigmatizing and false statements, was to deflect criticism and to distract attention from

6  SCVMC's poor leadership and deficient procedures.  (Complaint, ¶¶ 25, 26.)  Plaintiff also

7  alleges that Dr. Nguyen, on behalf of SCVMC, unnecessarily reported Dr. Egge to the Medical

8  Board of California.  (Complaint, ¶ 26.)  SCVMC was not required to submit an 805 report to the

9  Medical Board of California.  (*Id*.)  This 805 report will be a black mark on Dr. Egge's career for

10  the rest of her life.  (*Id*.)  Dr. Nguyen submitted this report without cause, in a further effort to

11  make Dr. Egge a scapegoat, and to punish Dr. Egge for voicing her concerns about SCVMC's

12  customs, policies, and practices.  (*Id*.)  Such arbitrary action, taken without regard for plaintiff's

13  rights, is unconscionable, and shocks the conscience.

14      The complaint adequately sets forth allegations showing the County's actions were

15  "arbitrary in the constitutional sense."  *See Lewis,* 523 U.S. at 845-46.   Because plaintiff has

16  alleged sufficient facts to state a claim, she should have an opportunity to conduct discovery on

17  the issue.  *See Dice v. City of Grand Coulee*, No. 11-CV-296-JLQ, 2012 WL 4793718, at *8

18  (E.D. Wash. Oct. 9, 2012) ("[T]he court will not dispose of Plaintiff's substantive due process

19  claim at this early stage without allowing Plaintiff the opportunity to conduct discovery as to his

20  alternative assertion that the City's decision to terminate him was in fact motivated by ill will,

21  nepotism, or some ulterior motive ….").  Because the County acted with shocking indifference to

22  Dr. Egge's protected interests, she has stated a claim for deprivation of substantive due process.

23      **E.      Dr. Egge's Substantive Due Process Claim Is Not Subsumed By Her Stigma-**
         **Plus Claim**.

24      Defendants also argue that Dr. Egge's substantive due process cause of action is

25  subsumed under the rule of *Graham v. Connor*, 490 U.S. 386 (1989), which held that "[w]here a

26  particular Amendment provides an explicit textual source of constitutional protection against a

27  particular sort of government behavior, that Amendment, not the more generalized notion of

28

substantive due process, must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (*quoting Graham*, 490 U.S. at 395) (internal quotation marks omitted). (Motion to Dismiss, 16:13-21.) Defendants' argument is without merit.

Defendants fail to cite any case that has concluded that a procedural due process claim can act to subsume a substantive due process claim. Defendants rely, instead, on cases that declined to find due process violations when other, ***more specific, amendments or constitutional violations***, were applicable. *See, e.g., Graham*, 490 U.S. at 394 (due process claim subsumed by Fourth Amendment claim); *Albright*, 510 U.S. at 274; *Hufford v. McEnaney*, 249 F.3d 1142, 1144 (9th Cir. 2001) (due process claim subsumed by First Amendment claim); *Velez*, 401 F.3d at 94 (due process claim subsumed by First Amendment claim or Equal Protection Clause). None of these cases is applicable here.

## F. Plaintiff Has Sufficiently Pled Section 1983 Liability Against The County.

The Supreme Court, in *Monell v. Department of Social Servs*., "held that municipalities are 'persons' subject to damages liability under section 1983 where 'action pursuant to official municipal policy of some nature cause[s] a constitutional tort.'" *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (*quoting Monell,* 436 U.S. at 691). There are multiple ways on which to base liability under Section 1983 (*see generally Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (discussing theories of municipal liability)). To establish an official policy that would give rise to *Monell* liability, a plaintiff may show (1) that "the individual who committed the constitutional tort was an official with final policy-making authority," or (2) that a policymaking official "ratified a subordinate's unconstitutional decision or action and the basis for it." *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 977047, at *11 (N.D. Cal. Mar. 14, 2017). Under *Ulrich v. City and County of San Francisco*, 308 F.3d 968 (9th Cir. 2002), the County is liable if "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Id*. at 985. As such, an individual's actions may make the County liable under *Monell* if someone delegated policymaking authority, or subsequently ratified actions.

1          1.    Final Decision by a Municipal Policymaker.

2          A "single decision by a municipal policymaker may be sufficient to trigger section 1983

3    liability under *Monell*, even though the decision is not intended to govern future situations."

4    *Gillette,* 979 F.2d at 1347.  "[A] municipality can be liable for an isolated constitutional violation

5    when the person causing the violation has 'final policymaking authority[,]' … [or] if the final

6    policymaker 'ratified' a subordinate's actions."  *Christie v. Iopa*, 176 F.3d 1231, 1235, 1238 (9th

7    Cir. 1999) (*quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988)).  The

8    determination of who has final policymaking authority is a question of state law, which includes

9    "custom or usage having the force of law."  *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737

10   (1989) (*superseded by statute on other grounds as stated in Federation of African Am. Contrs. v.*

11   *City of Oakland,* 96 F.3d 1204, 1205 (9th Cir.1996)).

12         2.    Ratification of a Subordinate's Action.

13         Ratification is a question of fact for the jury.  *Christie*, 176 F.3d at 1238-39.  Under Ninth

14   Circuit law, a plaintiff states a claim under *Monell* if the plaintiff alleges that the "authorized

15   policymakers approve a subordinate's decision and the basis for it."  *Id.* (*citing City of St. Louis,*

16   485 U.S. at 127).  In *Hernandez v. City of San Jose*, allegations of a Police Chief's statements

17   approving of police officers' actions was sufficiently pled to state a claim that the City was liable

18   for the police officers' allegedly unconstitutional actions under *Monell*.  The court held that "this

19   'evinces ratification' and therefore is sufficient to plausibly allege that the police officers'

20   actions constituted municipal policy."  *Hernandez,* 2017 WL 977047, at *14-15; *see also*

21   *Christie*, 176 F.3d at 1240 (holding that Monell liability is appropriate if a representative of the

22   municipality "affirmatively approved" of the allegedly unconstitutional conduct).

23         3.    Plaintiff Has Alleged Facts Sufficient to Impose Liability on the County
              Under Both Theories.
24
         Plaintiff alleges facts sufficient to impose Section 1983 liability on the County under both

25   theories of Constitutional liability.  Plaintiff has alleged that Dr. Smith and Dr. Nguyen, both of

26   whom had final policymaking authority, knew of and approved these unlawful acts, pursuant to a

27   widespread and longstanding practice and custom of the County.  (Complaint, ¶¶ 7, 8, 43-45, 52-

28
                                                      14

54.)  Each defendant was aware that the other defendants planned to commit these wrongful acts, and agreed and intended that these acts be committed.  (Complaint, ¶ 11.)  Each defendant knew that these wrongful acts committed by the other defendants, and gave substantial assistance and encouragement in furtherance of these acts.  (Complaint, ¶ 12.)  As such, plaintiff has alleged that Dr. Nguyen and Dr. Smith, both with final policymaking authority, made a decision to act illegally, and that both of these actors ratified the actions of subordinates in regards to the illegal activity.

## III.  PLAINTIFF HAS STATED A CLAIM FOR PROMISSORY ESTOPPEL.

### A.    Elements Of A Promissory Estoppel Claim.

Promissory estoppel is a valid claim where there is a relied upon promise, even when consideration to form a contract is absent.  "Where consideration is lacking, a contract may nonetheless be enforceable under the doctrine of promissory estoppel."  *Reyes v. Wells Fargo Bank, N.A.*, No. C–10–01667, 2011 WL 30759, at *11 (N.D. Cal. 2011); *Raedeke v. Gibraltar Sav. & Loan Assn.,* 10 Cal.3d 665, 672-673 (1974).   As acknowledged by defendants, municipalities are subject to the doctrine of promissory estoppel.  (Motion to Dismiss, 20:7-17).

Promissory estoppel is shown by (1) a promise, (2) reasonably foreseeable to induce action, for which (3) injustice may only be avoided by enforcement.  *Drennan v. Star Paving*, 51 Cal.2d 409 (1958); *Graham–Sult v. Clainos*, 756 F.3d 724, 749 (9th Cir. 2014); *Faulks v. Wells Fargo & Co.*, No. 13-CV-02871-MEJ, 2017 WL 492673, at *7 (N.D. Cal. Feb. 7, 2017).

#### 1.    Dr. Stirling Made a Clear and Unambiguous Promise to Dr. Egge That He Would Make the Report.

Lack of mutual assent is "immaterial" to promissory estoppel, because the claim "is not premised upon the existence of an enforceable contract."  *H.W. Stanfield Constr. Corp. v. Robert McMullan & Son, Inc.*, 14 Cal. App. 3d 848, 852 (1971).  A "promise" is an assurance. *Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 417 (2015).

///

///

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

Dr. Egge meets this standard. She alleges that in November, 2015, per SCVMC's routine practice, the Orthopedic Review Committee reviewed the child's case as part of a Quality Improvement review. (Complaint, ¶ 18.) Dr. Stephen Harris, the Chair of the Department of Pediatrics, asked Dr. Egge to do a supplemental review of the child's case. (*Id*.) On November 17, 2015, Dr. Egge briefly reviewed the child's records, and discussed the case with Dr. Stirling, as he was the assigned SCAN physician on the case. (Complaint, ¶ 19.) After listening to Dr. Egge's case analysis, Dr. Stirling told Dr. Egge that he would report the case to Child Protective Services. (Complaint, ¶¶ 19, 20, 57, 58.) The promise to report suspected child abuse was clear and unambiguous.

2. <u>Dr. Egge's Reliance on Dr. Stirling's Promise was Reasonable and Foreseeable</u>.

Reliance is reasonable where it is shown that the promisor intended to induce reliance. *West v. Hunt Food, Inc*., 101 Cal. App. 2d 597, 605 (1951). Promissory estoppel binds a promissor "when he should reasonably expect a substantial change of position … in reliance on his promise …. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted." *Jones v. Wachovia Bank,* 230 Cal. App. 4th 935, 944 (2014).

Dr. Egge alleged reasonable reliance. Plaintiff alleges that she reasonably relied on Dr. Stirling's promise because Dr. Stirling was (1) the SCVMC doctor assigned to the case, (2) a senior physician at SCVMC, (3) a child abuse expert himself, and (4) Dr. Egge's supervisor. (Complaint, ¶¶ 6, 13, 17-20.) Plaintiff's complaint alleges that Dr. Stirling knew or should have known "that plaintiff would be reasonably induced to rely on Dr. Stirling's promise and representation." (Complaint, ¶ 58.)

Moreover, defendants' claim that Dr. Egge's reliance was not reasonable is a factual question not appropriate for resolution on a motion to dismiss. *See City of Geneseo. v. Utilities Plus,* 533 F.3d 608, 617 (8th Cir. 2008) ("Whether a party's reliance is reasonable is ordinarily a fact question for the jury unless the record reflects a complete failure of proof."); *Div. of Labor*

*Law Enf't v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275-76 (1977) (noting the existence of the elements of promissory estoppel constitute a question of fact).  Plaintiff's allegations are sufficient to plead reasonable reliance.

### 3.   Equity Requires Enforcement Of Dr. Stirling's Promise.

Promissory estoppel enforces promises where equity demands enforcement.  *Div. of Labor Law Enf't,* 69 Cal. App. 3d at 275; *Drennan,* 51 Cal.2d at 409.  This is shown by reliance on the promise and substantial detriment resulting therefrom.  *Blatt v. University of Southern Calif.*, 5 Cal. App. 3d 935, 944 (1970).  Plaintiff must plead that her reliance on the promise caused her injury.  *Aceves v. U.S Bank, N.A.*, 192 Cal. App. 4th 218, 225, 228 (2011); *US Ecology, Inc.*, 129 Cal. App. 4th at 909.

Plaintiff's allegations establish that equity calls for enforcement here.  Plaintiff alleges that she learned that the child Dr. Stirling promised to report to Child Protective Services died in January 2016, of suspected child abuse. (Complaint, ¶ 21.)   Dr. Egge checked the child's records and discovered for the first time that Dr. Stirling did not report the case to Child Protective Services, as Dr. Stirling had promised.  (Complaint, ¶¶ 21, 59, 60.)  As a result of the failure to report, Dr. Egge was made a scapegoat, and terminated by SCVMC.  But for Dr. Stirling's inexcusable failure to keep his promise, Dr. Egge would still have a job, and her good name and professional reputation would remain intact.  Justice cannot allow Dr. Stirling to avoid liability for causing such severe harm to Dr. Egge – personally and professionally.

## B.   County Liability Arises Out Of An Agency Relationship.

Defendants allege that Dr. Egge cannot make out the elements of promissory estoppel against any defendants other than Dr. Stirling.  (Motion to Dismiss, 19:12-14.)  Such an argument ignores basic principles of agency law.  The County is liable for the actions of its agent, Dr. Stirling, on the basis of vicarious liability. Whether Dr. Stirling possessed authority to bind SCVMC is a highly factual question, beyond the scope of inquiry at the pleading stage.

///

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

It is not necessary for a pleading to allege an agency relationship in order to survive a Rule 12(b)(6) motion. *Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842, 852-53 (N.D. Cal. 2007); *Greenberg v. Sala*, 822 F.2d 882, 886 (9th Cir.1987) ["[A]s a matter of law, allegations of agency, vicarious liability, and/or respondeat superior are not required."]). "Unless all evidence material to the issue of ostensible authority is uncontroverted, it is an issue to be resolved by the trier of fact." *House v. State of California*, 119 Cal. App. 3d 861, 874–75 (1981) (citations and internal quotes omitted).

Nevertheless, ostensible authority may be established by conduct by the principal creating a belief in the minds of third persons that an agency exists and a reasonable reliance thereon. *Goldman v. SunBridge Healthcare LLC*, 220 Cal. App. 4th 1160, 1173 (2013); *Garber v. Prudential Ins. Co. of America*, 203 Cal. App. 2d 693, 702 (1962). A principal is liable for the acts of an agent within the scope of the agent's authority. *Northern Cal. Dist. Council of Hod Carriers v. Pennsylvania Pipeline, Inc.*, 103 Cal. App. 3d 163, 172 (1980).

Plaintiff has alleged facts showing an agency relationship between Dr. Stirling and the County defendants. Dr. Egge alleges that Dr. Stirling, a SCVMC employee, was Dr. Egge's supervisor, the director of the Center for Child Protection at SCVMC, and the only other SCAN physician at SCVMC. (Complaint, ¶¶ 6, 13.) As such, defendants held Dr. Stirling out as a person with authority to bind defendants with respect to actions taken in his role as the director of the Center for Child Protection at SCVMC. Dr. Stirling made his promise to Dr. Egge while in his position of power as a leader at SCVMC. Dr. Egge reasonably viewed Dr. Stirling as authorized to bind defendants. Therefore, under an agency theory, Dr. Stirling's actions, taken within the scope of and due to the employment status provided to him by defendants, are attributable to defendants.

## C. Qualified Immunity Does Not Apply.

Defendants allege that government immunities bar Dr. Egge's claim for promissory estoppel. (Motion to Dismiss, 21:17-21.) Defendants misconstrue the applicability of government immunities at the pleading stage. In assessing a qualified immunity defense on a

motion to dismiss, a court must "regard all of the allegations in [the] complaint as true." *Hernandez,* 2017 WL 977047, at *11 (*citing Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999)). A court should deny a motion to dismiss on the basis of qualified immunity if the complaint "allege[s] acts to which qualified immunity may not apply." *Id.* (citing *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). Under this standard, it is impossible to determine based on a complaint alone that qualified immunity is warranted. *Id.* (*citing Morley,* 175 F.3d at 761). In such circumstances, a court may deny a qualified immunity defense without prejudice and after further factual development a defendant may re-raise the qualified immunity issue "at summary judgment or at trial." *Id.*; *see also Treglia v. Kernan*, C-12-2522-LHK, 2013 WL 4427253, at *3 (N.D. Cal. Aug. 15, 2013) (denying a motion to dismiss based on qualified immunity without prejudice).

Here, Dr. Egge's claim for promissory estoppel against the County defendants may not be subject to government immunities; therefore dismissal at this stage would be improper. Defendants argue that Dr. Egge's claim for promissory estoppel as to Dr. Stirling is actually a claim arising out of contract or tort law. (Motion to Dismiss, 21:5-22:15.) Dr. Egge is not alleging that Dr. Stirling entered into a contract with her; instead, she is asserting that equity requires that his promise be upheld, and Dr. Stirling's failure to keep his word caused her harm. An equitable claim for promissory estoppel is not akin to a legal claim for breach of contract. A claim for promissory estoppel does not sound in tort. Because Dr. Egge's promissory estoppel claim may not be subject to qualified immunities, it would be improper to grant a motion to dismiss on this basis. *See Groten,* 251 F.3d at 851.

Plaintiff does not bring suit in tort, but instead, holds defendants liable on the basis of promissory estoppel, a claim characterized by courts as being "basically the same as contract actions, but only missing the consideration element." *U.S. Ecology, Inc.*, 129 Cal. App. 4th 903. Government Code section 815.2 does not, as defendants argue, abolish vicarious liability of government entities. Instead, it affirms that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his

1  employment if the act or omission would, apart from this section, have given rise to a cause of

2  action against that employee or his personal representative."  Gov't. Code § 815.2.

3       The court in *Burden v. Cty. of Santa Clara*, 81 Cal. App. 4th 244 (2000), held that

4  Government Code section 818.8, immunizes the government for negligent or intentional

5  misrepresentations by government employees.  Clearly, plaintiff has not brought a claim for

6  negligent or intentional misrepresentation, both of which are torts.  Again, her claim is for

7  promissory estoppel, a claim akin to contract, not subject to government immunities relevant in

8  tort law.  The County remains vicariously liable on a promissory estoppel theory of liability.

9  Moreover, such a factual analysis is inappropriate at the pleading stage.

10 **IV.    PLAINTIFF HAS STATED A CLAIM FOR BREACH OF CONTRACT.**

11      A cause of action for breach of contract consists of (1) the contract, (2) plaintiff's

12 performance, (3) defendant's breach, and (4) damages.  *Oasis W. Realty, LLC v. Goldman*, 51

13 Cal.4th 811, 821 (2011).  It is sufficient to generally allege the substance of a contract to survive

14 a motion to dismiss.  *Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1146 (N.D.

15 Cal. 2015) (*citing Frances T. v. Village Green Owners Ass'n*, 42 Cal.3d 490, 511 (1986)).

16 Requiring more would be "at odds with Supreme Court authority requiring only that the

17 pleadings provide 'fair notice' of the claim being asserted and the grounds upon which it rests.

18 *Id*. (*citing Twombly,* 550 U.S. at 555).  As defendants recognize, Government Code section 814

19 provides that no government immunity exists for contract claims.  (Motion to Dismiss, 21:6-12.)

20 The complaint here alleges facts sufficient to meet this pleading standard.

21      **A.    Plaintiff Alleged The Existence Of A Contract.**

22      Plaintiff's complaint alleges the existence of a contract between the parties.  Specifically,

23 plaintiff alleges that the SCVMC Medical Staff Bylaws constituted a contract between her and

24 defendants.  (Complaint, ¶ 62.)  Dr. Egge specifically alleges that her suspension and termination

25 were for activities that arose in the context of her acting as a Quality Assurance Reviewer, which

26 under SCVMC's Medical Staff Bylaws, entitled her to immunity.  (Complaint, ¶ 25.)  Under the

27 Bylaws, summary suspension is appropriate only where there is clear evidence of immediate risk

28

of harm to patients. (*Id.*) Dr. Egge's termination did not meet this standard. (*Id.*) In addition, the Medical Executive Committee of SCVMC failed to convene a meeting within one (1) week of the imposition of Dr. Egge's summary suspension to review the suspension, as required by the Bylaws. (*Id.*, n. 3.) The complaint includes allegations that defendants violated the Bylaws by failing to provide the protections, processes, and procedures guaranteed to SCVMC employees. (Complaint, ¶ 65.)

Defendants' argument that the Medical Staff Bylaws cannot constitute a contract as a matter of law is erroneous. As an initial matter, this argument contradicts their earlier argument concerning the validity and binding nature of the Bylaws with respect to hearing procedures. (*See* Motion to Dismiss, 10:23-26; 11:4-8; 11:21-22.) Moreover, as acknowledged by defendants, Medical Staff Bylaws may constitute a binding contract between a hospital and physician in some instances. *See, e.g., O'Byrne v. Santa Monica-UCLA Med. Ctr.,* 94 Cal. App. 4th 797, 810 (2001) (medical staff Bylaws may constitute a contract between hospital and doctors if the Bylaws are incorporated into an employment contract); *Ennix v. Stanten,* 556 F. Supp. 2d 1181, 1186 (N.D. Cal. 2008) (noting a jury could reasonably conclude that a contractual relationship arose out of the hospital's granting of medical-staff privileges to the plaintiff-doctor in exchange for the doctor's agreement to abide by the Bylaws).

As explained and relied on by the court in *Ennix*, performance of bylaws may amount to contractual obligations. *Ennix*, 556 F. Supp. 2d 1083. In so holding, the *Ennix* court relied on the district court's decision in *Janda v. Madera Community Hosp*. 16 F.Supp.2d 1181 (E.D. Cal. 1998), which found that a contract had been formed between the hospital and a doctor supported by consideration, which consisted of the promise to "comply with the hospital's bylaws, rules, and regulations." *Id.* at 1186-87.

///

///

///

///

In *O'Byrne*, the court also relied on *Janda* in holding that, while medical staff bylaws "adopted pursuant to California Code of Regulations, title 22, section 70703, subdivision (b), do not in and of themselves constitute a contract between a hospital and a physician on its medical staff[,] [w]hether they become incorporated into a separate employment contract between the hospital and the physician is another question." *O'Byrne,* 94 Cal. App. 4th at 810.

In *Janda*, the court stated that "bylaws govern the relationship between the hospital and its medical staff, and each party is required to perform in accordance with the terms of the bylaws. Consequently, an aggrieved physician can enjoin a hospital from contravening the terms and provisions of the bylaws." *Janda v. Madera Cmty. Hosp.,* 16 F. Supp. 2d 1181, 1186 (E.D. Cal. 1998). There, the court found that "an express employment contract was formed between the Hospital and Dr. Janda … supported by … the Hospital's promise to employ Dr. Janda on stated terms and conditions and Dr. Janda's promise to work under those conditions." *Id.*

Similarly, here, plaintiff pleads that her employment with defendants gave rise to obligations which included adherence to the Bylaws. California authority shows that medical bylaws may create enforceable obligations. Defendants' argument is simply an assertion of its position on the merits, and is not appropriate on a motion to dismiss, which is concerned solely with the pleadings. Since a factual dispute exists over whether the Bylaws are binding, dismissal of this claim for failure to allege the existence of a contract is inappropriate. *See Ennix,* 556 F. Supp. 2d at 1084 (whether there is a contractual relationship between hospital and physician is a question of fact). Plaintiff's complaint alleges the existence of a contractual obligation between plaintiff and defendants.

## B. Plaintiff Alleged Performance and Breach of the Contract.

Performance and breach may be alleged generally. *Adobe Sys. Inc. v. A & S Elecs., Inc.,* 153 F. Supp. 3d 1136, 1146 (N.D. Cal. 2015) (*citing Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal. App. 3d 1371, 1389 (1990)). It is sufficient to generally allege the substance of a contract to survive a motion to dismiss. *Id.* (*citing Frances T. v. Village Green Owners Ass'n,* 42 Cal.3d 490, 511 (1986)). Requiring more would be "at odds with Supreme

Court authority requiring only that the pleadings provide 'fair notice' of the claim being asserted and the grounds upon which it rests." *Id*. (*citing Twombly,* 550 U.S. at 555). Moreover, "whether a party has performed as required by a contract, or breached it, is a question of fact." *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1161 (E.D. Cal. 2009) (*citing Stonebrae, L.P. v. Toll Bros., Inc*., No. C08–0221 EMC, 2009 WL 1082067, at *5 (N.D. Cal. 2009) ["Ordinarily, whether a party has performed as required under a contract is a question of fact for a jury, not a judge, to decide."]).

Dr. Egge's complaint alleges performance and breach of the Bylaws. Plaintiff did all, or substantially all, of the significant things the Bylaws required her to do. (Complaint, ¶ 63.) All conditions required by the Bylaws for defendants' performance had occurred. (Complaint, ¶ 64.) Defendants failed to do the things required by the Bylaws, and in fact did other things that were prohibited by the Bylaws. (Complaint, ¶ 25, 65.) Dr. Egge has sufficiently pled performance and breach.

### C. <u>Plaintiff Alleged Damages Resulting from Breach.</u>

The fact of damages are matters of proof, not pleading; they cannot be decided at the pleading stage and "do not preclude a cause of action based on contract." *Coprich v. Superior Court,* 80 Cal. App. 4th 1081, 1092 (2000). Evidence of damages is not "an element of a cause of action for breach of contract." *Midland Pac. Bldg. Corp. v. King*, 157 Cal. App. 4th 264, 275 (2007) (citation omitted). Dr. Egge has alleged that as a proximate result of defendants' breach, she was harmed. (Complaint, ¶ 66.) Dr. Egge was terminated from her employment at SCVMC by defendants and not provided the protections and procedures provided by the Bylaws, and her reputation was tarnished so as to impede her ability to obtain similar employment in the future. (Complaint, ¶¶ 25, 27, 33, 35, 42, 62, 65.)

///

///

///

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS COUNTY OF SANTA CLARA, PHUONG NGUYEN, AND JEFFREY SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; Case No. 17-CV-02842-BLF

## **CONCLUSION**

Dr. Egge has met her burden of pleading government liability for violations of procedural and substantive due process. Dr. Egge has also adequately alleged a breach of the SCVMC Bylaws, as well as sufficient facts for promissory estoppel. Dr. Egge has met her pleading burden. Defendants' motion should be denied, and plaintiff should be permitted to conduct discovery on her claims.

Dated: August 1, 2017

McMANIS FAULKNER

/s/ James McManis
JAMES McMANIS
TYLER ATKINSON
HILARY WEDDELL
JAMES GIACCHETTI

Attorneys for Plaintiff,
MELISSA EGGE, M.D.