UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MELISSA EGGE,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>    Defendants. | Case No. 17-cv-02842-BLF<br><br>**ORDER GRANTING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; AND DISMISSING ACTION**<br><br>[Re: ECF 55, 59] |

Plaintiff Melissa Egge, M.D., a Suspected Child Abuse and Neglect ("SCAN") physician, filed this lawsuit after her termination from Santa Clara Valley Medical Center ("VMC") in the aftermath of a child's death. Dr. Egge claims that her supervisor, Dr. John Stirling, failed to contact Child Protective Services ("CPS") about a two-year-old boy who came in with multiple bone fractures despite his obligation (and express promise) to do so, and that Dr. Egge was made a scapegoat when the boy died of abuse several months later. She sues Santa Clara County, VMC, and senior County and VMC officers (collectively, "County Defendants") for federal constitutional violations under 42 U.S.C. § 1983 and for violations of California state law. She also sues Dr. Stirling for violations of state law.

Both the County Defendants and Dr. Stirling move to dismiss the first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court GRANTS the County Defendants' motion to dismiss Dr. Egge's federal constitutional claims without leave to amend and declines to exercise supplemental jurisdiction over Dr. Egge's state law claims, which are DISMISSED without leave to amend and without prejudice.

## I. BACKGROUND[1]

Dr. Egge began working for VMC as a Child Abuse Pediatrician in July 2011. FAC ¶ 17, ECF 54. She reported to Dr. Stirling, the Director of the Center for Child Protection at VMC. *Id.* ¶ 20. Dr. Egge and Dr. Stirling were the only SCAN physicians at VMC and they were alternately on call for child abuse issues. *Id.* ¶ 21. Both Dr. Egge and Dr. Stirling reported to Dr. Stephen Harris, the Chair of the Department of Pediatrics. *Id.* ¶ 20.

In the early morning hours of July 4, 2015, Dr. Egge was called by a VMC intern about a two-year-old child who had come in with "bilateral supracondylar fractures," that is, fractures just above the elbow joint on both arms.[2] FAC ¶ 23. The child had been transported from another local hospital, O'Connor Hospital, due to concerns about non-accidental trauma and orthopedic management. *Id.* The child's mother said that he was injured when he slipped and fell backward on both his outstretched hands, which – as Dr. Egge informed the intern – was not a pattern of injury typical for non-accidental trauma. *Id.* Dr. Egge told the intern that if the O'Connor doctors suspected abuse, they should make a report. *Id.* Dr. Egge was not asked to see the child or perform an inpatient consultation, and she went off call later that morning. *Id.* ¶ 24.

Other VMC doctors discovered that the child actually had more bone fractures than originally thought, and orthopedic surgery was performed over the July 4th weekend. FAC ¶ 25. Dr. Stirling consulted on the case while the child was inpatient at VMC, but he did not report suspected abuse and the child was discharged to go home with his mother. *Id.*

During a review of the case months later, the Orthopedic Review Committee became concerned that a report to CPS was warranted. FAC ¶ 26. Dr. Egge was asked to do a supplemental review of the case, as Dr. Stirling was the assigned SCAN consulting doctor. *Id.* ¶ 26. Upon review of the child's records, Dr. Egge discovered that he had suffered four fractures, not the two of which she had been informed during the telephone consultation. *Id.* ¶ 27. Given

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

[2] "A supracondylar humerus fracture is a fracture of the distal humerus just above the elbow joint." https://en.wikipedia.org/wiki/Supracondylar_humerus_fracture (last visited May 1, 2018).

2

1  that information, Dr. Egge reported to Dr. Harris that a CPS report should have been made. *Id.*
2  Dr. Harris asked Dr. Egge to speak to Dr. Stirling, which she did on November 17, 2015, and at
3  that time Dr. Stirling agreed to file a CPS report. *Id.*

4  On December 22, 2015, before leaving on a week-long vacation, Dr. Egge checked in with
5  Dr. Stirling to make sure he had made the CPS report. FAC ¶ 29. Dr. Stirling stated that he had
6  forgotten to make the report but he promised to do so that evening. *Id.* In fact, Dr. Stirling did not
7  make a report, and the child died in January 2016, apparently from physical and sexual abuse. *Id.*
8  When Dr. Egge learned of the death in February 2016, she checked the hospital's records and
9  found that Dr. Stirling had placed a note in the child's chart on December 24, 2015 indicating that
10 a CPS report was not warranted. *Id.* ¶ 30. Dr. Egge contacted Dr. Harris to inform him of the
11 child's death and Dr. Stirling's failure to make a CPS report. *Id.* ¶ 32. During that conversation,
12 Dr. Egge voiced her concerns about the failure to report in that specific child's case and also about
13 VMC's policies and procedures in general. *Id.* ¶¶ 32-34.

14 On March 11, 2016, Dr. Egge was put on administrative leave. FAC ¶ 35. On April 21,
15 2016, the Medical Executive Committee of VMC recommended a 6-month summary suspension
16 of Dr. Egge's clinical privileges and medical staff memberships. *Id.* The next day, April 22,
17 2016, Dr. Egge was fired by Dr. Jeffrey Smith, the County Executive. *Id.* Dr. Phuong Nguyen,
18 VMC's Chief of Staff, reported Dr. Egge to the Medical Board of California. *Id.* ¶ 37. Although
19 state law requires reporting of suspensions only if they total at least 15 days, Dr. Nguyen reported
20 Dr. Egge for what was effectively a 1-day suspension. *Id.* Dr. Egge believes that Dr. Nguyen
21 reported her as punishment for voicing her concerns about VMC's policies and practices. *Id.* ¶ 39.
22 The County also disseminated false information to the press in an effort to deflect criticism from
23 VMC's deficient procedures. *Id.* ¶ 43. Subsequent articles published in the *San Jose Mercury*
24 *News* contained inaccurate statements that Dr. Egge was fired for failing to report abuse of a
25 toddler and for failing to act as required by law. *Id.* ¶¶ 41-42.

26 Dr. Egge appealed her summary suspension and received a Judicial Review Committee
27 ("JRC") hearing. FAC ¶ 50. She claims that the hearing was a staged proceeding which was
28 conducted so that Defendants could avoid liability. *Id.* Dr. Egge nonetheless prevailed, and the

3

JRC found that her summary suspension was unreasonable. *Id.* ¶ 51. Despite that finding, Dr. Egge has not regained her good name in the medical profession. *Id.* She has applied for at least 3 positions in the Bay Area, without success. FAC ¶ 45. She now has a part-time position as a SCAN doctor in Southern California. *Id.* ¶ 46. She is separated from her husband and children for several days each week when she flies to Southern California for work. *Id.*

Dr. Egge filed this action on May 17, 2017 against the County, VMC, Dr. Smith, Dr. Nguyen, and Dr. Stirling. The Court granted Defendants' Rule 12(b)(6) motions to dismiss the original complaint with leave to amend. Dr. Egge subsequently filed the operative FAC, asserting the following claims: (1) a § 1983 claim for "Stigma-Plus" against the County Defendants; (2) a § 1983 claim for deprivation of Substantive Due Process against the County Defendants: (3) breach of written contract against the County and VMC; (4) breach of oral contract against the County, VMC, and Dr. Stirling; (5) promissory estoppel against the County, VMC, and Dr. Stirling; and (7) violation of California Labor Code § 1102.5 against the County and VMC.[3] The FAC alleges that the Court has federal question jurisdiction with respect to the § 1983 claims and supplemental jurisdiction with respect to the state law claims. FAC ¶ 1.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are

---

[3] Although actually the sixth claim in the FAC, the § 1102.5 claim is mislabeled as the "Seventh Cause of Action." There is no claim labeled as the "Sixth Cause of Action."

1  subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## III. DISCUSSION

Before turning to the parties' arguments as to the adequacy of Dr. Egge's claims, the Court addresses the County Defendants' request for judicial notice of the following documents: (a) excerpts of the County of Santa Clara's Charter; (b) excerpts of the County of Santa Clara's Ordinance Code; (c) the transcript of this Court's hearing regarding Defendants' motion to dismiss the original complaint in this matter; (d) a copy of a *Mercury News* article dated April 29, 2016 which is referenced at paragraph 41 of the FAC; and (e) a copy of a *Mercury News* article dated May 3, 2016 which is referenced at paragraph 42 of the FAC. County Defs.' RJN, ECF 56-2. Judicial notice is appropriate with respect to items (a), (b), and (c). *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). The Court may consider the *Mercury News* articles submitted as items (d) and (e) under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine permits a court to consider documents referenced in but not physically attached to the complaint). Accordingly, the County Defendants' request for consideration of all of the identified documents is GRANTED.

### A. § 1983 Claims

As noted above, subject matter jurisdiction is based on federal question, specifically, on two § 1983 claims asserted against the County Defendants. The Court addresses those claims first, because absent a viable federal claim the Court declines to exercise supplemental jurisdiction over Dr. Egge's state law claims.

Both of the § 1983 claims allege deprivations of Dr. Egge's rights guaranteed under the Due Process Clause of the Fourteenth Amendment. Claim 1 is a "stigma-plus" claim based on the County Defendants' statements to the Medical Board and the press. Dr. Egge asserts that those statements harmed her reputation to such a degree as to effect a deprivation of both a protected property interest in her employment and a protected liberty interest in the right to work in her

5

chosen profession. FAC ¶ 65. Claim 2 alleges that the County Defendants' acts, including publicly humiliating Dr. Egge but not subjecting others at VMC to such demeaning treatment, "were so arbitrary and capricious that they shock the conscience." *Id.* ¶ 73. Dr. Egge asserts that "Defendants' wrongful acts alleged above" in the General Allegations section effected a deprivation of both a protected property interest in her employment and a protected liberty interest in the right to work in her chosen profession. *Id.* ¶¶ 72-74.

The County Defendants seek dismissal of these claims on a number of grounds. First, they argue that Dr. Egge has not alleged facts sufficient to show a deprivation of either a property interest or a liberty interest – a threshold requirement for a Due Process Claim. Second, they contend that the alleged statements to the Medical Board and the press were not stigmatizing. Third, they argue that Dr. Egge's claims lack merit because she concededly received a name clearing hearing and she has not shown that the hearing was constitutionally deficient. Fourth, the County Defendants argue that Dr. Egge has not alleged facts showing that one actor was responsible for both the allegedly stigmatizing publications and her termination. And finally, they argue that Dr. Egge has not alleged facts giving rise to liability against the County. Because the first argument is dispositive, the Court need not reach the others.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

### 1. Property Interest

With respect to Dr. Egge's claim that she was deprived of a property interest in her employment, "government employees can have a protected property interest in their continued employment *if* they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." *Blantz v. California Dep't of Corr. & Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013). Dr. Egge has not alleged facts showing that she had tenure at VMC or that VMC could fire her only for cause. The FAC contains only bare allegations

6

that she had "a property right in her employment." FAC ¶ 72. However, "[t]here must be some source, recognized under state law" for Dr. Egge's "claimed *entitlement* to her position, not merely her unilateral expectation that it would continue." *Blantz*, 727 F.3d at 924.

In her opposition to the County Defendants' motion, Dr. Egge suggests two sources for her asserted entitlement to her position, the County Ordinance Code and VMC's Medical Staff Bylaws. While Article 11 of the County Ordinance Code provides that "classified employees" are entitled to discipline for cause, no such entitlement is granted to "unclassified employees." County Ordinance Code Art. 1 Sec. A25-35, Art. 11 Sec. A25-301, Exh. B to Defs.' RJN, ECF 56-2. It is undisputed that Dr. Egge was an "unclassified employee." *See* County Charter Art. VII Sec. 701(a)(7), Exh. A to Defs.' RJN, ECF 56-1. With respect to the Bylaws, Dr. Egge has made only a bare allegation that they were "a component of her contractual employment agreement with the County of Santa Clara." FAC ¶ 18, ECF 54. She does not point to any contractual language or other facts showing how the Bylaws were incorporated into her employment contract. The Bylaws themselves provide that "Medical Staff membership will automatically terminate, without the right to a review, hearing, or other appeal procedures . . . when the provider is no longer employed by the County." Bylaws ¶ 2.6, Exh. A to FAC, ECF 54-1. That provision certainly does not suggest any continuing right to employment. Given the plain language of the County Ordinance and the Bylaws, the Court finds that Dr. Egge's conclusory allegations are insufficient to plausibly allege a property interest in employment under the standards set forth in *Iqbal* and *Twombly*.

The County Defendants' motion to dismiss is GRANTED as to Dr. Egge's § 1983 claims based on alleged deprivation of a property interest in her employment.

### 2. Liberty Interest

With respect to Dr. Egge's claim that she was deprived of a liberty interest in the right to work in her chosen profession, the Ninth Circuit has "recognized the liberty interest in pursuing an occupation of one's choice." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007). Thus "[a] public employer can violate an employee's rights by terminating the employee if in so doing, the employer makes a charge that might seriously damage the terminated employee's

standing and associations in his community or imposes on a terminated employee a stigma or other disability that forecloses his freedom to take advantage of other opportunities." *Blantz*, 727 F.3d at 925 (internal quotation marks, citations, and alterations omitted). However, "the liberty interests protected by the Fourteenth Amendment are implicated only when the government's stigmatizing statements effectively exclude the employee completely from her chosen profession." *Id.* "Stigmatizing statements that merely cause reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession do not constitute a deprivation of liberty." *Id.* (internal quotation marks omitted).

Dr. Egge has alleged that she is working in her profession, and in fact in her area of specialty, as a SCAN physician in Southern California. FAC ¶ 46. That allegation is fatal to her liberty interest claims. Dr. Egge does allege that she has been unable to obtain employment in the Bay Area as a result of the County Defendants' conduct and that her current employment is only part-time. *Id.* ¶¶ 45-46. She also explains that her inability to obtain local employment has required to her travel to Southern California on a weekly basis, obtain part-time housing and transportation there, and endure separation from her husband and children for several days out of the week. *Id.* ¶ 46. While Dr. Egge understandably would prefer to work in the Bay Area, and clearly is suffering hardship as a result of her inability to do so, "people do not have liberty interests in a specific employer." *Blantz*, 727 F.3d at 925 (internal quotation marks, citation and alteration omitted). "Thus, stigmatizing statements do not deprive a worker of liberty unless they effectively bar her from *all* employment in her field." *Id.* Dr. Egge has not alleged that she is effectively barred from *all* employment in her field, only employment in her preferred geographic locale.

The County Defendants' motion to dismiss is GRANTED as to Dr. Egge's § 1983 claims based on alleged deprivation of a liberty interest in her chosen profession.

### 3. Leave to Amend

Having determined that Dr. Egge's § 1983 claims are subject to dismissal, the Court must decide whether leave to amend is warranted. Leave ordinarily must be granted unless one or more

8

of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors). The Court finds no undue delay (factor 1) or bad faith (factor 2). However, despite the Court's prior order dismissing the original complaint with guidance regarding amendment, Dr. Egge still has not alleged a viable § 1983 claim (factor 3). At the hearing, Dr. Egge's counsel stated that Dr. Egge had put her "best foot forward" with respect to factual allegations supporting the § 1983 claims, indicating that no additional facts could be added to those claims even if amendment were permitted. Thus while granting further leave to amend might not prejudice the County Defendants "unduly" (factor 4), it would be futile (factor 5).

After weighing the relevant factors, the Court finds it appropriate to dismiss the § 1983 claims – Claims 1 and 2 – WITHOUT LEAVE TO AMEND.

### B. State Law Claims

Absent a viable federal claim, the Court declines to exercise supplemental jurisdiction over Dr. Egge's state law claims. "A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, the case is still at the pleading stage. Under these circumstances, the Court perceives no reason to exercise supplemental jurisdiction over Dr. Egge's state law claims here.

Accordingly, Dr. Egge's state law claims – Claims 3, 4, 5, and 7 – are DISMISSED WITHOUT LEAVE TO AMEND AND WITHOUT PREJUDICE.

//

//

9

## IV. ORDER

For the foregoing reasons,

(1) Claims 1 and 2, arising under federal law, are DISMISSED WITHOUT LEAVE TO AMEND;

(2) The Court DECLINES to exercise supplemental jurisdiction over Claims 3, 4, 5, and 7, arising under state law. The state law claims are DISMISSED WITHOUT LEAVE TO AMEND AND WITHOUT PREJUDICE; and

(3) The action is DISMISSED.

Dated: May 7, 2018

_____
BETH LABSON FREEMAN
United States District Judge